

POLICE DEPARTMENT
NEW YORK, N.Y. 10038-1497

LAWRENCE BYRNE
DEPUTY COMMISSIONER, LEGAL MATTERS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 3 2018

May 2, 2018

**BY HAND DELIVERY**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re: United States v. James Grant and Jeremy Reichberg,
     S2 16 Cr. 468 (GHW)**

Dear Judge Woods:

    This letter is respectfully submitted to address further the defense request for discovery of information pertaining to the New York City Police Department's ("NYPD") use of specialized equipment. We understand that your Honor has invited a submission from the NYPD to assist you in reaching an appropriate resolution of this matter. I am, therefore, writing to advise you that the NYPD strongly opposes the proposed disclosure of the information, namely detailed facts about the daily and annual use of NYPD helicopters and harbor launches. Please be advised that we closely hold such information because disclosure is likely to have serious implications for public safety in New York City as well as national security given our long-established role in working closely with various other law enforcement agencies in national counterterrorism efforts.

    As the Court is well aware, Federal Rule of Criminal Procedure16(d)(1) provides that "at any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant appropriate relief" through the utilization of a protective order. It is well settled that denial of discovery for good cause extends to "the protection of information vital to the national security." See Fed. R. Crim. P. 16, Advisory Committee's Note to 1966 Amendment; see also United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008); United States v. Hausa, 232 F. Supp. 3d 257 (E.D.N.Y. 2017). Moreover, the Second Circuit has ruled that information about sensitive law enforcement techniques and procedures, including those of local police departments, are protected by the law enforcement privilege. See In re City of N.Y., 607 F.3d 923, 944 (2010) (law enforcement privilege granted to NYPD reports containing detailed information about undercover operations). To assert

COURTESY • PROFESSIONALISM • RESPECT
www.nyc.gov/nypd

Misc. 243-B (04-15)

effectively the law enforcement privilege, the NYPD must demonstrate that the information pertains to law enforcement techniques and procedures, the disclosure of which would endanger law enforcement personnel or otherwise interfere with an investigation. Id. The investigation, however, need not be ongoing. The privilege also applies if disclosure would seriously impair "the ability of a law enforcement agency to conduct future investigations." Id.

In United States v. Briggs, 831 F. Supp. 2d 623 (W.D.N.Y. 2011), the district court recognized the applicability of the Second Circuit's analysis of the law enforcement privilege to an assessment of good cause under Rule 16. As a result, the Briggs Court held that the government was not required to disclose particular settings that were utilized by law enforcement in the employment of a specific wiretap technology, citing both Rule 16 and In re City of N.Y., 607 F.3d 923 (2010).

Given these principles, access to the requested information in the instant case should be denied. The information sought, the "Average Hours Used per Day" and "Annual Mileage" of the NYPD's helicopters and harbor launches, indisputably pertains to confidential law enforcement techniques and procedures. On a regular basis, the NYPD uses this equipment in its counterterrorism efforts, investigative functions, rescue operations, dignitary protection, and policing of large scale events such as the annual United Nations General Assembly, for example. Disclosure of this specific information about its use would provide individuals who are intent upon carrying out terror attacks, assaulting or harming visiting state dignitaries or members of the public, or evading police detection or apprehension for violent felonies not only how often the Department deploys such countermeasures, but, equally important, how often it does not. Put simply, in the hands of a malicious actor, this information could be used to analyze the NYPD's capabilities and practices and to subvert the Department's counterterrorism measures, criminal investigations and its other ongoing efforts to maintain order and ensure public safety. In this sense, it falls squarely within the privilege.

For the same reasons, the NYPD routinely protects information of the type sought by the defense in this case in the context of New York Freedom of Information Law ("FOIL") requests by members of the public.[1] In response to similar FOIL requests, the NYPD regularly invokes the statute's specific exemptions pertaining to information that "would interfere with law enforcement investigations," or otherwise "reveal criminal investigative techniques or procedures, except routine techniques or procedures." N.Y. Pub. Off. Law §§ 87(2)(e)(i), 87(2)(e)(v). Indeed, the federal Freedom of Information Act allows law enforcement agencies to invoke similar exemptions. See Freedom of Information Act, 5 U.S.C. § 552 (2016).

It is my understanding that at the trial of the above-captioned case, the Government will seek to introduce evidence regarding the average hourly cost of the use of an NYPD helicopter and harbor launch. This evidence was provided to the prosecution by the NYPD in the form of a chart containing a considerable amount of non-privileged information about the equipment's costs, including purchase price, average annual maintenance costs, average annual fuel costs, average useful life, average annual depreciation and average hourly operating costs. The only redactions pertained to the two items described which reflect not cost, but use. I have been advised by the Government that the defendants were provided with the chart and have failed to demonstrate

---

[1] The NYPD receives in excess of 17,000 FOIL requests each year.

specifically to the Court how the protected and privileged information about use is material and necessary to the defense. Indeed, it is difficult to envision how the average *use* of the equipment by the NYPD is in any way relevant to its *cost* of deployment, except perhaps with respect to the equipment's depreciation. Yet, as noted above, the defense has received information about the equipment's depreciation.

Given this failure by the defendants, the privilege applies and good cause is established to deny the information's disclosure. There is a strong presumption against not applying the law enforcement privilege, and the party seeking disclosure must show a compelling need for the privileged information. See In re City of N.Y., 607 F.3d at 948. Moreover, even were the defendants to meet this high burden, the Court must still weigh the public interest in nondisclosure against that of the defendant. Id. Given the significant amount of information that the NYPD has thus far provided about this equipment and the limited trial issue regarding the cost of the equipment's deployment, the defendants would likely fail at this ultimate balancing test.

On behalf of the Department, I therefore respectfully request that the Court apply the law enforcement privilege to deny defendant's application for discovery pursuant to Rule 16(d)(1) and adhere to the NYPD's redactions to the document entitled "FY'17 Rates for NYPD Equipment" throughout all stages of the trial. For your reference, I have enclosed a copy of the relevant document as redacted.

Respectfully submitted,

Lawrence Byrne
**Deputy Commissioner,**
**Legal Matters**

CC: Assistant United States Attorneys
Martin S. Bell, Jessica Lonergan, &
Kimberly J. Ravener
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007


John Meringolo, Esq.
Meringolo & Associates, P.C.
375 Greenwich Street
New York, NY 10013

Susan Necheles, Esq.
Hafetz & Necheles, LLP
10 E. 40th Street, 48th Floor
New York, NY 10016