*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 4, 2018

**BY ECF and EMAIL**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    <u>United States</u> v. <u>Grant, et al.</u>
            S2 16 Cr. 468 (GHW)

Dear Judge Woods:

    The Government respectfully writes in response to defendant James Grant's motions to preclude the testimony of two witnesses: New York City Police Department ("NYPD") Sergeant Dameion Cox, (Dkt. No. 244 ("Cox Motion")), and Prostitute-1, (Dkt. No. 248 ("Prostitute-1 Motion," and, collectively with the Cox Motion, "Grant Motions")).

    In the Cox Motion, Grant contends that the testimony of Sergeant Cox, a supervisor at the NYPD Academy, is irrelevant because Cox was not an instructor at the time that Grant attended the Academy, and is unfairly prejudicial because Grant is charged with violating federal law, not NYPD policy. These arguments rely on an unduly constrained definition of relevance and ignore the Court's prior ruling in this case that the NYPD Patrol Guide is admissible at trial. As such, the Cox Motion should be denied.

    In the Prostitute-1 Motion, Grant argues that because the evidence at trial is anticipated to show that Grant paid for her services, the presence of Prostitute-1 on the February 2013 all-expenses-paid trip to Las Vegas was not a benefit to Grant, rendering her testimony irrelevant. This contention is based on a faulty legal premise, and the Prostitute-1 Motion too should be denied.

*Sergeant Cox's Testimony Is Relevant*

    Sergeant Cox, whom the Government has characterized as a lay witness, is currently a supervisor at the NYPD Academy. He is expected to testify about the current curriculum at the NYPD Academy, including instructions regarding bribes and the receipt of gifts. Cox's testimony is also expected to cover his review of Academy materials from 1996 and 1997, when both Cox and Grant attended the Academy (Grant in 1996 and Cox in 1997). Based on his experience as a new recruit around the same timeframe as Grant, and as an instructor and supervisor at the NYPD Academy, Cox is anticipated to testify about the similarities between the present-day curriculum

Hon. Gregory H. Woods
May 4, 2018

and that taught in 1996/1997.  In particular, Cox is expected to testify that the curriculum in and around 2013 through 2016—*i.e.*, a time frame both relevant to the charged conduct *and* during which Cox was an instructor at the Academy—the curriculum regarding bribery and the receipt of gifts was substantially the same, in material respects, as it had been in 1996.

Relatedly, Cox is expected to testify regarding the NYPD Patrol Guide—both overall and its specific provisions.  Cox is familiar with the Patrol Guide both through his position at the Academy and as an NYPD officer, and is expected to testify that he and all officers have an ongoing obligation to know and follow the provisions of the Patrol Guide.  Cox, as an NYPD officer himself, and an instructor and supervisor, is particularly well suited to explain the relevant Patrol Guide provisions—how they relate to and extend concepts taught to new recruits at the Academy.

As the description of Cox's anticipated testimony set forth above makes clear, the fact that Cox was not an instructor in 1996 when Grant attended the Academy (although Cox himself attended a year later) is no bar to the testimony's relevance.  As an instructor and a supervisor at the Academy, Cox is particularly familiar with NYPD policies regarding bribes and gifts.  Given that these policies have remained essentially consistent over the past 20 years, Cox is well-situated to testify regarding what recruits were learning in 1996.  The Government intends to argue that certain actions by these officers violated the Patrol Guide.  Their training in NYPD policies and procedures, as well as the fact that certain portions of this training have changed little over time, bears directly on the question of whether they had the requisite criminal intent.  Cox's anticipated testimony that NYPD instruction regarding bribery and corruption has changed little over the past two decades is powerful proof that Grant and the other officers would and did know that their actions were violations of NYPD policies.  Moreover, Cox was an instructor at the Academy during the time-period of the charged conspiracy.  Grant will be hard-pressed to argue that the principles being taught to new recruits at the NYPD Academy did not apply to him, a high-ranking officer.  As such, Cox's testimony is highly probative of Grant's intent.

To the extent that Grant argues that Cox's testimony regarding the Patrol Guide creates unfair prejudice by conflating a violation of NYPD policy with a violation of federal law, this is nothing more than a reformulation of an argument already rejected by the Court.  In its motions *in limine*, the Government argued for the admission of certain provisions of the Patrol Guide, (Dkt. No. 144), which Grant opposed, citing essentially the same arguments that he currently advances, (Dkt. No. 158).  The Government contended that here, as in other corruption cases, evidence that a defendant's conduct violated internal regulations goes "directly to whether [the defendants] possessed the requisite criminal intent to actively participate in a scheme to defraud."  *United States* v. *Fumo*, No. CRIM. A. 06-319, 2009 WL 1688482, at *40 (E.D. Pa. June 17, 2009).  The Government acknowledged that a limiting instruction would be appropriate to explain to the jury the purposes for which this type of evidence may and may not be used and provided sample instructions that had been used in similar cases.  After considering the parties' arguments, the Court ruled that it expected to "permit evidence of violations of the NYPD patrol guide with cautionary limitations." (Apr. 6, 2018 Tr. 35).

Hon. Gregory H. Woods
May 4, 2018

The Court has already determined that evidence regarding the NYPD's internal regulations is relevant and admissible, and that any danger of unfair prejudice can be cabined by an appropriate limiting instruction. Grant presents no justification for reconsidering the Court's prior ruling on this issue. Nor could he, as no such reason exists. The Court's ruling is in line with the holdings of numerous courts to have considered similar questions. As such, the Court should reject Grant's motion to preclude the testimony of Sergeant Cox.

*Prostitute-1's Testimony Is Relevant*

Assuming for purposes of this motion that Grant did pay for Prostitute-1's services,[1] and further assuming that this had been the arrangement from the beginning of the weekend (a factual matter that the sources quoted by Grant do not make clear), these facts render the testimony of Prostitute-1 irrelevant to the charged conduct. Title 18, United States Code, Section 201(b), from which the *quid pro quo* requirement in each of the relevant charged offenses derives, criminalizes the making of a corrupt promise to a public official to give "*anything* of value" in exchange for official action. 18 U.S.C. § 201 (emphasis added). As numerous courts have held, "'value' for the purposes of § 201 is subjective." *United States* v. *Menendez*, 132 F. Supp. 3d 635, 640 (D.N.J. 2015) (holding that bribery "turns on a subjective definition of "'anything of value'"); *see also United States* v. *Renzi*, 769 F.3d 731, 744 (9th Cir. 2014) ("anything of value" is "defined broadly to include 'the value which the defendant subjectively attaches to the items received'" (*quoting United States* v. *Gorman*, 807 F.2d 1299, 1305 (6th Cir. 1986))); *United States* v. *Williams*, 705 F.2d 603, 623 (2d Cir. 1983) ("Corruption of office occurs when the officeholder agrees to misuse his office in the expectation of gain, whether or not he has correctly assessed the worth of the bribe."). Therefore, even where the thing being given has no monetary or tangible value, a bribe recipient can nevertheless place value, albeit subjective value, on the thing being furnished. *See, e.g.*, *United States* v. *Moore*, 525 F.3d 1033, 1048 (11th Cir. 2008) (upholding jury instruction that "impliedly defined sex as a 'thing of value'" in case where prison guards engaged in sexual acts with inmates in exchange for contraband); *United States* v. *McDade*, 827 F. Supp. 1153 (E.D. Pa. 1993) (holding that small gifts, such as golf bag, could be items with subjective value, qualifying as "things of value" for congressman charged with accepting illegal gratuities)

In fact, the Second Circuit has explicitly held that the phrase "thing of value" is "generally construed to cover intangibles as well as tangibles," and that "[s]exual intercourse, or the promise of sexual intercourse, is a thing of value under a bribery statute." *United States* v. *Girard*, 601 F.2d 69, 71 (2d Cir. 1979). Interpreting the same language in a variety of criminal statutes, myriad

---

[1] While certain sources cited in the Prostitute-1 Motion support Grant's assertion that he paid for the services of Prostitute-1, the Motion misconstrues Jona Rechnitz's testimony at the trial in *United States v. Seabrook and Huberfeld*, 16 Cr. 467 (ALC). Rechnitz did not testify that "Grant personally paid Prostitute-1 for her services during the Las Vegas Super Bowl trip." (Prostitute-1 Mot. 3). Rather, Rechnitz testified that he himself "had nothing to do with arranging or paying for that prostitute" and that it "was other people who did it." (*Seabrook* Tr. 1171). Rechnitz did not identify during his prior testimony exactly who paid for the services of Prostitute-1, and the Government anticipates that, if asked, Rechnitz would testify that he does not know who paid for the services of Prostitute-1.

Hon. Gregory H. Woods
May 4, 2018

other courts have agreed. *See, e.g.*, *United States* v. *Petrovic*, 701 F.3d 849 (8th Cir. 2012) (explaining that "[n]umerous intangible objectives have been held to constitute things of value under a variety of other statutes, including romantic pursuits and sex-related consideration" and holding that a "'sexual relationship'" may be an intangible "'thing of value'" one intends to extort under [18 U.S.C.] § 875(d)); *United States* v. *Kulla*, 434 F. App'x 268, 279 (4th Cir. 2011) ("time and attention of … a woman much younger than [the defendant] was a 'thing of value'"); *United States* v. *Owen*, 585 F.3d 1055, 1058 (7th Cir. 2009) (holding that "sex" is a "thing of value"); *see also United States* v. *Cook*, 782 F.3d 983, 988-89 (8th Cir. 2015) (defining phrase "anything of value" in 18 U.S.C. § 1591 to include "sex acts"); *United States* v. *Marmolejo*, 89 F.3d 1185, 1993 (5th Cir. 1996) (defining phrase "anything of value" to include "conjugal visits).

The Government anticipates that the evidence will show that Reichberg made arrangements for Prostitute-1 to accompany them on the trip to Las Vegas and to be present for any of the traveling parties, including Grant, who wished to avail themselves of her services. As such, the provision of Prostitute-1 is indisputably a *quid* as to Reichberg. In addition, a jury could reasonably find that Grant placed value on that opportunity—presumably a particularly unusual and rare one for him given his status as a high-level police official, as to whom the direct solicitation of a prostitute would carry considerable risk. Gaining access to a prostitute at all would presumably be difficult for a person with heightened obligations to follow the law; that access could therefore reasonably have been something on which Grant placed value even if he ultimately paid Prostitute-1.

More than that, Prostitute-1's services were not, as alleged, made available to Grant within a vacuum. They were part of a larger, inarguable *quid*—an all-expenses paid trip to Las Vegas that featured, among other things, a fancy suite at a luxury hotel and a private jet with a prostitute available for any of the passengers to engage. Grant's attempt to extract Prostitute-1 from that *quid* is artificial and should not prevail. And in any event, Prostitute-1 is also clearly a witness to the broader *quid*, and whose testimony is relevant and highly probative for that independent reason, and thus admissible in any event. In particular, the Government expects that the defendants will attempt to discredit Rechnitz, the other witness who is expected to testify about the Las Vegas trip, rendering the testimony of Prostitute-1 important to corroborate Rechnitz. As such, Prostitute-1 is an important witness as to one of the more prominent *quids* in this case, *i.e.*, an expenses-paid, luxurious getaway for Grant and another NYPD officer. Nor is this testimony unfairly prejudicial to Grant because, as discussed above, the access to Prostitute-1 and her services was reasonably something of value to Grant. Given the highly probative nature of such testimony—it constitutes direct evidence of a *quid*—the evidence regarding Prostitute-1, even if salacious, is not unduly prejudicial.

Hon. Gregory H. Woods
May 4, 2018

For the reasons set forth above, the Court should deny the Grant Motions, and allow the testimony of both Cox and Prostitute-1.

                                             Respectfully submitted,

                                             GEOFFREY S. BERMAN
                                             United States Attorney

By:    /s/
                      Martin S. Bell
                      Jessica Lonergan
                      Kimberly J. Ravener
                      Assistant United States Attorneys
                      (212) 637-2463/1038/2358

cc:     All Counsel (by ECF and email)