USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/18

------------------------------------------------------------ X
                        :

UNITED STATES OF AMERICA,     :
                        :
                        :
     -against-            :           1:16-cr-468-GHW
                        :
JEREMY REICHBERG, and JAMES GRANT,  :     MEMORANDUM OPINION
                        :          AND ORDER
           Defendants.    :
                        :
------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

      Defendants Jeremy Reichberg and James Grant are charged in an indictment with respect to a number of offenses, including honest services wire fraud and public corruption. They come before the Court requesting that the case against them be dismissed because the Government's failure to comply with its discovery obligations delayed trial in violation of the Speedy Trial Act (18 U.S.C. § 3161, the "STA") and their constitutional right to a speedy trial. In regards to the STA, the Defendants admit that the Court has excluded time such that the 70 day period window provided by the STA (the "Speedy Trial clock") did not expire prior to the commencement of trial on November 5, 2018. Nonetheless, Defendants request that the Court reconsider certain of its prior exclusions of time, and dismiss this case on STA grounds. For the reasons that follow, Defendants' motion is denied in its entirety.

## I.    Background

      On July 7, 2016 a grand jury returned a seven-count indictment against James Grant and

Jeremy Reichberg.[1]  A superseding indictment was filed on April 3, 2018.[2]  Defendants were charged with a number of offenses, including conspiring to commit and committing honest services wire fraud, conspiring to and effectuating the solicitation, payment, and acceptance of bribes, and obstruction of justice.  The investigation of those crimes was sprawling, including over 11,000 Title III wiretap audio files and thirty-three seized electronic devices, which, along with the other discovery produced in this case, constituted an amount of data best measured in terabytes.  Over the course of the voluminous and complex production of discovery in this case, the Government failed to recognize that it had inadvertently withheld significant amounts of required discovery.  As a result, certain of the Government's representations to the Defendants and the Court regarding the completeness of their production were not fully accurate.  When gaps in the Government's production were pointed out by Defendants, and their counsel protested that they could not proceed to trial without additional time to process the documents, the Court excluded time to permit its review.  Those determinations are subject of this motion.

### A.  Factual Background

At the initial conference on July 19, 2016, the Court accepted the Government's proposal that two-months would constitute a sufficient window for discovery in this case.  July 19, 2018 Tr. (ECF No. 28) at 7-11.  Subsequently, however, on October 18, 2016, the Government, with consent of Defendants, alerted the Court by letter that while "gigabytes" of discovery had been produced, which was in and of itself "challenging to navigate," there was still "some discovery [which] has not been produced yet."  Gov. lttr., Oct. 18, 2016 (ECF No. 43).  The Government requested that the discovery deadline be "reset" to December 1, 2016, that the next status conference be adjourned to

---

[1] Then co-defendant Michael Harrington was also indicted.  Mr. Harrington pleaded guilty on March 1, 2018, (ECF No. 135), and was sentenced on June 11, 2018.  (ECF No. 173).  Accordingly, he did not join the motions discussed in this opinion.  References to "Defendants" therefore refer to Mr. Grant and Mr. Reichberg.
[2] Though the original indictments contained seven counts, the Government "is no longer proceeding on count 6."  Gov.'s Omnibus Mem in Opp.  (ECF No. 328) at 4.

February 1, 2017, and that the intervening time be excluded pursuant to the STA. *Id.* The Court granted that request on October 20, 2018, continued the then-scheduled pretrial conference from October 27, 2016 to February 1, 2017, and excluded time in the ends of justice though the new conference date. (ECF No. 44).

During that extended discovery period, the parties continued to confer regarding the Government's production. Notably, on November 15, 2016, the Government wrote to counsel for then-Defendant Michael Harington and represented that defense counsel had received "the entirety of the recordings from the Title III intercepts referenced in the discovery materials. . . . We can confirm that the relevant audio has all been given to you. . . . We will continue to work on getting the remainder of the [discovery] materials available and produced before the reset discovery deadline." Gov. lttr., Nov. 11, 2016 (ECF No. 320-1). On December 16, 2016, the Government, via email, requested that defense counsel provide 2-terabyte hard drives on which the Government would load "the remaining electronic discovery." Gov. email, Dec. 16, 2016 (ECF No. 320-2).

On January 25, 2017 the Government, with consent of Defendants, requested a second extension of the discovery period, and that the initial conference be further adjourned to March 31, 2017 to accommodate the expanding scope of discovery in this case. Gov. lttr., Jan. 25, 2017 (ECF No. 47). The Government noted that they had recently and unexpectedly recovered additional materials from a related investigation, which combined with the extraction of additional data from electronic devices amounted to a substantial amount of additional discovery. On January 26, 2017 the Court granted that request, adjourned the conference to March 31, 2017, and excluded time in the ends of justice through March 31, 2017. Order, Jan. 26, 2017 (ECF No. 48).

Counsel continued to confer regarding the production of discovery. On February 23, 2017, during a conference call between counsel, the Government "assured defense counsel that, with the exception of certain devices of [Defendant] Reichberg's that remained locked and that the FBI had

not yet been able to access, discovery was complete."[3]  Decl. of Kathleen Cassidy, Aug. 8, 2018

(ECF No. 320) ("Cassidy Decl.") ¶ 9; *see id.*, Ex. D, Kathleen Cassidy email, March 28, 2017

("Cassidy email") (ECF No.  320-4) at 2.  The Government subsequently produced a discovery

index to Defendants on March 24, 2017.  Cassidy Decl., Ex. C, Gov. lttr., March 24, 2017 (ECF No.

320-3).  On March 28, 2018, counsel for Defendant Reichberg notified the Government that

substantial amounts of electronic discovery related to devices seized from Mr. Reichberg's home

remained outstanding.  Cassidy email.

At a status conference on March 31, 2017, the Government stated that "with respect to the

electronic discovery that's really been slowing the case down, we believe [we have] produced

substantially what there is to produce."  March 31, 2017 Tr. (ECF No. 61) at 3-4.  The Government

acknowledged that there were "ambiguities" regarding whether "the contents of certain of the

devices that were seized from Mr. Reichberg have indeed been produced. . . .  [T]hey haven't been

indexed [by the F.B.I.] as effectively as they could be such that it is entirely clear which device goes

with which particular folder.  That's on us that's on the Government, and we take responsibility for

that."  *Id.* at 4.  The Government also stated that "the lion's share of the discovery" had been

produced, and specifically noted that Defendants "have all of the recordings that came off of [the]

Title III intercepts."  *Id.* at 4, 6.  Counsel for Defendant Reichberg stated that while she was

frustrated by the "massive" amount of discovery in this case, she believed that the Government was

acting "in good faith."  *Id.* at 9.  The Court, again with the consent of all parties, set a conference for

May 12, 2017, and excluded time through that date in the ends of justice.  *Id.* at 44-47.  The Court

specified that it intended to set a trial date at the May 12, 2017 conference.  *Id.* at 43.

At the May 12, 2017 conference, the Government stated that its position was "that to the

best of [its] knowledge, everything that we have listed in our communications to [Defendants] has

---

[3] The Court accepts Ms. Cassidy's uncontested account of this call.

now been produced . . . and we don't foresee additional materials, except, of course, for the possibility of an odd cell phone that is locked that we are somehow able to unlock." May 12, 2017 Tr. (ECF No. 68) at 6-7. At that same conference, counsel for Defendant Reichberg asserted that the Government had produced a hard drive to defense counsel moments prior to the conference, which was "the first time [Defendants] had received anything since the last court appearance" on March 31, 2017. *Id.* at 10.

On the "[u]nderstanding that the United States has represented to [the Court] that not all but the large bulk of discovery has been delivered in some format, if not the format requested," the Court set a trial date for April 30, 2018 and excluded time through that date in the ends of justice, with the consent of all parties. May 12, 2017 Tr. at 25-26, 39-40. The Government "strenuously" objected to the late trial date, citing the Speedy Trial clock as a rationale for an earlier date. *Id.* at 25. Counsel for Defendants, however, argued that they were "concerned given the amount of outstanding discovery, together with the multi-terabyte production that was just made to [the defense that] morning" that they would not be ready for trial until the end of April, 2018. *Id.* at 21. The Court acknowledged the "extraordinary length" of the delay, but stressed that "it is important for [the Court] to give [the defense] adequate opportunity, in their view, to prepare for trial." *Id.* at 26.

Approximately a week before the then-scheduled trial date of April 30, 2018, counsel for Defendant Reichberg "asked the government to look into certain irregularities in the wiretap data that appeared to indicate that significant number of calls were missing from the audio files and line sheets that have been included in the government's Title III productions." Cassidy Decl. ¶ 25. Shortly thereafter, on April 26, 2018, the Court granted an unrelated request to adjourn trial until May 14, 2018 so that the defense would have adequate time to review the Government's recent production. Defs.' Mot. at 7; Order, April 26, 2018 (ECF No. 226). On May 7, the Government

informed Defendants that it had failed to produce a significant number of wiretaps (the "Wiretap Issue"). *Id.* at ¶ 26.

The Court held a status conference on May 11, 2018, in which the Government admitted that approximately 4,000 calls had been inadvertently omitted from the Government's production of Title III wiretaps. May 11, 2018 Tr. (ECF No. 293) at 5-27. The Government explained that the reason that a substantial volume of wiretaps had not been produced, despite the Government's specific representations to the contrary on November 15, 2016 and March 31, 2017, related to the way which the calls had been categorized. *Id.* at 23-30. Each wiretap audio file was expected to be categorized as either pertinent or non-pertinent. *Id.* The Government would then produce the audio from each tapped phone line to the defense in two sets—one pertinent and the other non-pertinent. *Id.* at 17, 25-26. However, for two of the tapped phone lines at issue, certain calls were categorized using different tags, instead of pertinent or non-pertinent. *Id.* at 25-30. Those files were not produced in 2016 as the Government had previously represented. *Id.* The Court accepted the Government's proffer that its error was inadvertent, and had only recently "com[e] to the attention of the [G]overnment," but noted that "a substantial part of this problem lies at the feet of the United States as a result of its failure to conduct this kind of diligence prior to making [those] representations to the defense" on which the defense reasonably relied. *Id.* at 37.

In addition to the Wiretap Issue, during the May 11, 2018 conference, counsel for Defendant Reichberg raised a litany of other discovery issues, which, she asserted, made it impossible for the defense to proceed to trial on the scheduled date. Among those issues were significant concerns regarding *Brady* materials not previously presented to the defense. *See* May 11, 2018 Tr. (ECF No. 293) at 44-45. ("There are 115 different witnesses who they were produced to us on the 30th, May 2nd, and May 7th. 115 different witnesses saying Jona Rechnitz is lying and the story he is telling is false. We just got that this week at a time where clearly it is impossible for us to go and investigate

those people and prepare a defense for trial and review all of the 50 witnesses."). Counsel for Defendant Reichberg described hundreds of pages of previously undisclosed *Brady* material produced at or around May 9, 2018. Reichberg lttr., May 9, 2018 (ECF No. 273). While the *Brady* material that Defendants asserted had not been provided was substantial, they also asserted that there were additional statements missing. *See* May 11, 2018 Tr. (ECF No. 293) at 45-46. ("In addition, your Honor, over of these 115 witnesses, they do not have witnesses who they should have on this *Brady* material and should have been disclosed to us.")

Confronted by the recent disclosure of substantial amounts of previously unproduced documents—and Defendants' protestations that it would be impossible for them to adequately review them and try the case on the scheduled date, and that exclusion of the newly-discovered information was not an adequate remedy—the Court concluded that an adjournment of the trial date was necessary.[4] The United States stated that it would consent to an exclusion of time to permit the adjournment. Counsel for Defendant Reichberg stated that they would object to an exclusion of time, but also made it plain that Defendants could not effectively try the case without an adjournment.[5] Counsel for Defendant Grant joined that objection soon after. *Id.* at 65. The

---

[4] *See* May 11, 2018 Tr. at 58. ("THE COURT: Let's talk about the fundamental question here. I think that the arguments by the defense that have been raised here regarding the impact of the recent production of records to them and their concerns regarding concern that additional documents are still or have still not been provided to them are all substantial, those concerns lead me to the conclusion, as it does the defense and I understand from Ms. Lonergan's comments at the outset and perhaps even the government's, they require an adjournment of our trial commencement date. Simply put even if only a small percentage of 4,000 new records, for example, has substantive information, a small percentage of 4,000 is still a large number and the other recent document productions I think legitimately give the defense a serious concern regarding their ability to prepare adequately for trial. . . . Now, I am not drawing the conclusion that the government failed to produce Brady materials earlier, because the ultimate consequence of the government's failure to produce Brady materials under this circumstance would in any event be the same as the conclusion that I am about to draw, namely, that an adjournment of the trial start date is warranted. I come to that conclusion with great regret given the fact that this case has been pending for a long time and that the parties have been working to prepare for trial for a long time, but these recent discoveries by the defense require an adjournment. So from a practical perspective I think that is necessary in order to ensure the defense's ability to prepare to meet the government's charges in light of this newly disclosed information both potentially *Brady* and other. And we need to build in some time to permit the parties to figure out what is missing from the wiretap information, if anything, and also to try to get a handle on that issue for purposes of trial.").

[5] *See* May 11, 2018 Tr. at 64-65. ("I do not want to consent to anymore time under the Speedy Trial Act, but I need more time. We can't go to trial without it. I feel as your Honor said the other day it has been two years. We should be

Court concluded that it should not force Defendants to go to trial immediately in a position in which they asserted they could not adequately prepare. *Id.* at 66-67.

The Court proposed a "relatively short adjournment" to permit the trial begin just a couple of weeks after the then-scheduled trial date "which would give the defense almost a month to review" the newly produced discovery and engage in motion practice. May 11, 2018 Tr. at 70-71 ("So I can accommodate that. It will require me rescheduling at least one trial. But I wanted to make sure that you all are aware that there is nothing that is keeping me from setting a relatively short adjournment that would still give the defense almost a month to review the issues that we've been talking about.").

The defense rejected the concept of a short deferral, however. *Id.* at 72-73 ("So, your Honor, I believe that it would be impossible to do this in a month. . . ."). Defendants proffered that "the earliest that the defense could be ready would be in the fall, in October. There are the Jewish holidays in September up to the beginning of October. So the beginning, I think the earliest we could be ready is in October." *Id.* at 73-74. The Court accepted Defendants' request to permit them time to prepare and to accommodate religious observances, and accordingly adjourned trial to October 4, 2018. *Id.* at 77-78.

Ultimately, the Court excluded time through October 4, 2018 in the ends of justice, stating:

> I find that the ends of justice served by excluding such time outweigh the best interests of the public and each of the defendants in a speedy trial. There are a number of reasons for this. I point most particularly to the letters submitted on behalf of both Mr. Reichberg and Mr. Grant explaining the multitude of reasons that they believe they cannot properly prepare for trial on the schedule that's currently established.

---

able to trying this case within two years. Your Honor set a discovery deadline of December of 2016 and the government still hasn't produced everything and they said they had in December of 2016. It is always us catching them. It is just not right. So I don't know what to say about excluding time under the Speedy Trial Act at this point. I think your Honor will make the decision, but I feel like we need to be clear at this point. We are objecting on speedy trial grounds to what has gone on here and we cannot go to trial now. We're not prepared because we did not get the stuff, but we wanted a speedy trial within the parameters of the massive amount of data here and that is totally being deprived from us.").

I do not believe that the ends of justice would be served by forcing the defendants to go to trial in the face of all the obstacles that they have asserted they face were they to do so, which lead defendants to the conclusion that going to trial on the current schedule would render counsel unable to provide effective assistance of counsel to each of the defendants and potentially undermine the defendants' opportunity to obtain a fair trial. Ultimately, those fundamental goals surely lie at the heart of the ends of justice, my desire to ensure that they have a fair trial with the benefit of effective assistance.

The particular issues that we've discussed here also I'll note highlighting the parties need to take some time to evaluate the issues that relate to the wiretaps and the additional evidence that's recently been produced in connection with them, as well as providing the defense the opportunity to review the other evidence that's recently been presented to them, some of which they assert to be Brady evidence. To the extent that it is *Brady* evidence, a conclusion that I'm not drawing now, an exclusion of time to permit the adjournment would be warranted in order to provide defendants with a remedy for the asserted *Brady* violation by the United States. And so I believe that that also drives my determination that the ends of justice are served by this exclusion of time.

It will also allow time for the parties to brief these potentially substantial motions regarding the issues that we've discussed and the impact of them on the speedy trial clock, which I expect to see. It will also allow time for the parties to continue to prepare for the trial of this matter.

So, for all of those reasons, I believe that an exclusion of time here is warranted, and I am excluding time from now until then.

*Id.* at 81-83.

On May 18, 2018, the Court held another status conference to learn about the unravelling of the Wiretap Issue, and the status of other discovery issues. May 18, 2018 Tr. (ECF No. 286). At that conference, the Government confirmed that the Wiretap Issue had been caused by the categorization of certain wiretap files as something other than pertinent or non-pertinent, and that the Government only produced those two categories of wiretap files. *Id.* at 6-7. Counsel for Defendant Reichberg then pointed out that certain of the wiretap files had been updated post-production, indicating that their categorization had been changed over the intervening years. *Id.* at 19-24. The Government confirmed that the categorization of certain wiretap files had indeed been updated since the initial production to the defense. *Id.* at 24.

In light of the acknowledged deficiency in the Government's productions and its representations regarding these productions, the Court expressed its concern with the Government's management of discovery, noting that "the [C]ourt and counsel relies on the thoroughness of the Unites States Attorney's Office with respect to production of things like Brady materials, with respect to production of Title III line sheets, with respect to things like 3500 materials. . . . Defense counsel should not need to do the kind of work they are doing here. And the [C]ourt should be able to rely on the work done by the government. . . . [W]hatever else we can say about the process the defense is using to bring these [issues] to the Court's attention, it does undermine the faith in the adequacy of the [G]overnment's productions." *Id.* at 27-28.

On September 7, 2018, the Court adjourned trial from October 4, 2018 to November 5, 2018, due to the health issues of a participant in the proceedings, and excluded that time in the ends of justice. Order, Sept. 7, 2018 (ECF No. 338). All parties consented to that exclusion of time.

Trial commenced on November 5, 2018.

### B. Procedural History

#### 1. Exclusions of Time under the Speedy Trial Act

In the interest of clarity, the chronology of the Speedy Trial clock in this case is summarized below. All exclusions were made in the ends of justice pursuant to 18 U.S.C. § 3161(h)(7).

- No time was excluded from the July 7, 2016 indictment to the initial appearance of Defendants before the Court on July 19, 2016.
- Time from, and including, the July 19, 2016 initial appearance to October 27, 2017 was excluded with the consent of all parties.
- Time from, and including, the Court's October 20, 2017 order to February 1, 2017 was excluded with the consent of all parties.
- Time from, and including, the Court's January 26, 2017 order to March 31, 2017 was excluded with the consent of all parties.
- Time from, and including, the March 31, 2017 conference until May 12, 2017 was excluded with the consent of all parties.
- Time from, and including, the May 12, 2017 status conference to the then-scheduled April 30, 2018 trial date was excluded with the consent of all parties.
- Time from, and including, the Court's April 30, 2018 order to May 12, 2018 was excluded

with the consent of all parties.

- At the May 11, 2018 hearing, the Court excluded time from, and including, that date until the then-scheduled trial date of October 4, 2018 over the objection of Defendants.
- On September 7, 2018, the Court adjourned trial due to the poor health of a participant in the proceedings, and all parties consented to the exclusion of time from, and including, October 4, 2018 to the new trial date, November 5, 2018.
- Trial commenced on November 5, 2018.

### 2. Submission of Defendants' Motion

At the hearing on May 11, 2018, defense counsel informed the Court that they intended to move to dismiss this case on Speedy Trial grounds. May 11, 2018 Tr. at 64-65, 73. The Court made it clear that it was unaware of the basis for that motion at that time, and that it would consider such a motion once it was submitted. *Id.* at 65-66. (observing that in the event "the defense ultimately moves to dismiss the case based on speedy trial grounds because of the government's asserted failure to produce discovery timely, which required this adjournment, I will rule on that application. I am not aware at this time of the case law that would support that application in particular in light of the fact that I did exclude time through now or to the ultimate trial date.").

On July 26, 2018, the Government submitted a letter to the Court requesting that a briefing schedule be set for "any further defense motions," (ECF No. 313), a request the Court denied as "the Court [was] not aware of the nature of any potential future motions" at that time. Order, July 31, 2018 (ECF No. 314). Later that same day, Defendant Reichberg requested that a briefing schedule be set, and identified their motion as raising "Constitutional Due Process and Speedy Trial" issues. Reichberg lttr., July 31, 2018 (ECF No. 315). Defendant Reichberg asked that the Court endorse the briefing schedule that the Government had agreed to. Pursuant to that schedule, Defendants' motion would be due August 10, just over 90 days after the May 11, 2018 conference. The Court modified the parties' proposed schedule, setting a deadline of August 6, 2018 for the filing. Order, July 31, 2018 (ECF No. 316). Defendant Reichberg requested an extension of that deadline. Reichberg lttr., Aug. 3, 2018 (ECF No. 317). Accordingly, and without perceiving the

significance for STA calculation purposes of the extended briefing schedule suggested by the Defendants, the Court extended the deadline to August 8, 2018.[6]  Order, Aug. 6, 2018 (ECF No. 318).  On August 8, 2018, 89 days after the May 11, 2018 hearing, Defendant Reichberg filed his STA motion.  (ECF No. 319).  Defendant Grant joined that motion on August 9, 2018.  (ECF No. 322).

## II.  Discussion

### A.  The Speedy Trial Act

"[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker v. Wingo*, 407 U.S. 514, 519 (1972).  The Speedy Trial Act's demand that justice be swiftly administered serves the public interest by, among other things, avoiding extended pretrial delays, which may "impair[ ] the deterrent effect of punishment," *Zedner v. United States*, 547 U.S. 489, 501 (2006), or "risk the loss of important evidence," *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990).  "Whenever [a prosecution]—for whatever reasons—falls short of meeting the Act's requirements, the administration of justice is adversely affected.  Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, justice delayed is justice denied." *United States v. Bert*, 814 F.3d 70, 83 (2d Cir. 2016) (internal quotations and quotation marks omitted).

"The Speedy Trial Act commands the government to bring criminal defendants to trial within seventy days of their first appearance before a judicial officer of the court or the filing of an indictment, whichever is later." *United States v. Tunnessen*, 763 F.2d 74, 76 (2d Cir. 1985); 18 U.S.C. § 3161(c)(1).  "If this deadline is not met, the district court must dismiss the indictment, either with or without prejudice." *Id.*; 18 U.S.C § 3162(a)(2).  Certain defined periods of delay are automatically excluded from the calculation of the seventy-day time limit, such as "delay resulting from any

---

[6] *See* n.11, below.

pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other

prompt disposition of, such motion.  18 U.S.C. § 3161(h)(1)(D); *see* 18 U.S.C. § 3161(h)(1)-(6).

"In order to 'avoid the pitfalls of unnecessary rigidity' and provide courts with the discretion

to deal effectively with individual cases, Congress included section 3161(h)(8)(A) [amended to be

§ 3161(h)(7)], which permits a district court on its own motion to grant continuances comprising

excludable time when it finds that 'the ends of justice . . . outweigh the best interest of the public

and the defendant in a speedy trial.'" *Tunnessen*, 63 F.2d at 76 (quoting S.Rep. No. 1021, 93rd Cong.,

2d Sess. 21 (1974) ("Senate Report")).  "[D]espite its interest in insuring flexibility, Congress

intended that this exclusion be "rarely used," and sought to avoid its abuse by providing that no

period of delay based on the "ends of justice" may be excluded "unless the court sets forth, in the

record of the case, either orally or in writing, its reasons for finding that the ends of justice [would

be] served" by granting the excludable delay.  *Id.* (quoting Senate Report at 41).  "Subsection

[(h)(7)(B)] contains a nonexclusive list of factors for the court to consider in deciding whether to

grant a continuance under subsection" (h)(7)(A).  *Id.*  According to 18 U.S.C. § 3161(h)(7)(C)

("Subsection (h)(7)(C)") "[n]o continuance [in the ends of justice] shall be granted because of

general congestion of the court's calendar, or lack of diligent preparation or failure to obtain

available witnesses on the part of the attorney for the Government."  Conduct on the part of the

"attorney for the Government" demonstrates a lack of diligent preparation within the meaning of

Subsection (h)(7)(C) if that conduct is "unjustifiable."[7] *United States v. Vasquez*, No. 87 CR. 526

---

[7] The "unjustifiable" standard adopted by the *Vasquez* court reconciles the otherwise somewhat contradictory jurisprudence on this standard.  *See United States v. Rodriguez*, No. 14CR832-WQH, 2014 WL 2779836, at *3 (S.D. Cal. June 19, 2014) (failure by Government to turn over rule 16 material to defendants until morning of trial due to legal error by prosecution prevented exclusion of time); *United States v. McIntosh*, No. CR 2015-0027, 2016 WL 4581407, at *3 (D.V.I. Aug. 31, 2016) (AUSA failure to appear due to restaffing prevented exclusion of time); *United States v. Strong*, 608 F. Supp. 188, 197 (E.D. Pa. 1985) (delay due to letters rogatory process did not prevent exclusion of time) (slip op.); *see also United States v. Hendley*, No. CR 14-46-ART-(3), 2016 WL 1633270, at *2 (E.D. Ky. Apr. 22, 2016) (Government failure to comply with Fed. R. Crim. Pro. 16 regarding disclosure of expert witness led to exclusion of evidence, citing lack of diligent preparation as rationale for not granting continuance); *compare United States v. Villarreal*, 707 F.3d 942, 954

(MJL), 1989 WL 82422 (S.D.N.Y. July 17, 1989) (quoting the Second Circuit Judicial Council Guidelines under the Speedy Trial Act).

"[T]ime may not be excluded based on the ends-of-justice unless the district court indicates at the time it grants the continuance that it is doing so upon a balancing of the factors," though "the precise reasons for the decision need not be entered on the record at the time the continuance is granted." *Tunnessen*, 63 F.2d. at 78. From a practical perspective, courts often must determine whether to exclude time, on the basis of the law and facts known to the Court, in real time. In colloquial terms, the Court must call the ball in the air.

### 1. Construction of Defendants' Motion

Defendants' motion objects to two exclusions of time in this case, the period from May 12, 2017 to the then-scheduled trial date of April 30, 2018 ("Period 1") which the Court excluded in the ends of justice with the consent of all parties, and the period from May 11, 2018 to the then-scheduled trial date of October 4, 2018 ("Period 2"), which was excluded in the ends of justice over Defendants' objection.

Defendants do not specify in their motion what procedural vehicle the Court should or must employ to reconsider those exclusions. *See* Defs.' Motion to Dismiss ("Defs.' Mot.") (ECF No. 321) at 19. Nor do Defendants point to any law which indicates whether the Court can reconsider a prior exclusion of time, what standard the Court should or must employ when making that determination, or what the effect of such a reconsideration would be. *Id.* As such, the Court construes Defendants' motion, in regards to STA issues, as requesting that the Court reconsider and vacate its prior exclusions of time with respect to Periods 1 and 2 pursuant to Local Rule 6.3 which governs motions to reconsider, and is applied in both criminal and civil contexts. *United States v. Hayward*,

---

(8th Cir. 2013) (delays due to processing evidence did not prevent an exclusion of time) *with United States v. Williams*, 391 F. App'x 675, 680 (9th Cir. 2010) (Government delay in sending evidence for forensic testing prevented exclusion of time).

No. 05 CR. 390 (SHS), 2006 WL 1559359, at *1 (S.D.N.Y. June 5, 2006).

## 2. Defendants' Motion to Reconsider Prior Exclusions of Time is Untimely

"Because the Federal Rules of Criminal Procedure do not specify the standards governing a motion to reconsider, the Court turns, as it has in the past and in accordance with other courts in the Southern District of New York, to Local Civil Rule 6.3 ("Local Rule 6.3") for the appropriate standard for reconsideration of a decision in a criminal matter." *Id.* (citing *United States v. Ramirez*, No. 03 Cr. 834, 2004 WL 1252940, at *1 (S.D.N.Y. June 7, 2004); *United States v. Delvi*, No. 01 Cr. 74, 2004 WL 235211, at *1 (S.D.N.Y. Feb. 6, 2004); *United States v. Mottley*, No. 03 Cr. 303, 2003 WL 22083420, at *1 (S.D.N.Y. Sept. 9, 2003). "Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Parrish v. Sollecito*, 253 F. Supp.2d 713, 715 (S.D.N.Y. 2003) (internal quotation marks omitted). Local Rule 6.3 requires that motions for reconsideration be filed within 14 days "after the entry of the Court's determination." Even in the criminal context, untimely motions for reconsideration "can be denied on [that] basis alone." *United States v. Yannotti*, 457 F. Supp.2d 385, 390 (S.D.N.Y. 2006); *see United States v. Nelson*, 2011 WL 2207584 (S.D.N.Y. June 3, 2011). "Under Local Rule 6.3, the moving party must 'point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *United States v. Almonte*, No. 14 CR. 86 KPF, 2014 WL 3702598, at *1 (S.D.N.Y. July 24, 2014) (quoting *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 256–57 (2d Cir. 1995) (observing that the standard for granting motions for reconsideration is "strict")). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation and quotation marks omitted).

Defendants' motion was filed on August 8, 2018, 89 days after the Court's decision to exclude time on May 11, 2018, and 453 days after the Court's May 12, 2017 exclusion of time.  May 12, 2017 Tr. at 39-40; May 11, 2018 Tr. at 61-65, 82-83; *see* Order, July 26, 2018 (ECF No. 314) (denying request to set motion briefing schedule as the "Court is not aware of the nature of any potential future motions"); Reichberg lttr., July 31, 2018 (ECF No. 315) (alerting the Court to its upcoming STA motion and requesting that a briefing schedule be set).  Accordingly, Defendants' motion is egregiously untimely under the 14 day rule established by Local Rule 6.3.

The 14 day time limit imposed by Local Rule 6.3 is not merely a procedural quirk, it serves to protect the integrity of proceedings before the Court by "ensur[ing] some measure of finality," and preventing gamesmanship by litigants.  *See U.S. v. Yannotti*, 457 F. Supp.2d 385, 388 (S.D.N.Y. 2006).  The 14 day rule takes on increased significance in the context of the STA, where exclusions of time and adjournments are most-often given in tandem.  In this case, the adjournments which led to the Court excluding time in both periods were granted primarily to allow Defendants the time they proffered to the Court was required to adequately prepare for trial.  May 12, 2017 Tr. at 26; May 11, 2018 Tr. at 81-83.

Had Defendants brought their applications within 14 days of either now-contested exclusion of time, and the underlying adjournment, it would have been possible for the Court to reconsider both the adjournment and the exclusion of time simultaneously, and, if necessary, it would have been possible for the Court to shorten the length of the adjournment and not provide Defendants the lengthy second extension that they requested.  In this case, however, Defendants brought this motion very late.  And, indeed, they originally offered a briefing schedule for the motion that would ensure that an extended period—significantly longer than the 70 days allotted under the STA— would elapse before the motion was filed.  The Court discerns a strategic purpose in that delay, since an earlier, timely motion would have automatically tolled the STA period under Subsection

(h)(1)(D).

The strategic delay in Defendants' motion with respect to these previously granted exclusions of time—namely, the decision to bring what is effectively a motion for reconsideration so long after the relevant decisions—makes it impossible for the Court to craft a more narrow remedy for the asserted violations. Since Period 1 and Period 2 are each independently longer than the 70 day Speedy Trial clock, if the Court were to reconsider its exclusion of either period, the Court would be forced to dismiss the case on Speedy Trial grounds. 18 U.S.C. § 3162(a)(2). The Court does not expect that this conundrum was unappreciated by counsel to Defendants; instead, as noted, it appears to be a stratagem.

"[T]he Speedy Trial Act was not meant to be applied so as to give 'gamesmanship priority over the practicalities of trial management.'" *United States v. Vasquez*, No. 87 CR. 526 (MJL), 1989 WL 82422, at *6 (S.D.N.Y. July 17, 1989) (quoting *United States v. Rush*, 738 F.2d 497, 505 (1st Cir. 1984)). Here, as noted above, the Court has shared some of Defendants' concerns about the adequacy of the Government's discovery and other productions. But Defendants' approach to this motion—particularly the timing with which it was brought—sings of gamesmanship.

Defendants benefited from lengthy adjournments, granted over the Government's objections, which the Court granted expressly to allow the defense adequate time to prepare for trial. Defendants now object to one of those adjournments. Defendants were offered a short month-long adjournment to permit them to meet the newly discovered evidence. The Court granted them a lengthier extension to provide them the time that they asserted they needed in order to prepare for trial and to meet their religious obligations. Had they brought this motion more promptly, the Court might have granted a shorter adjournment. Defendants' late-filed motion to reconsider here, however, does not permit the Court to take any action in response to Defendants' concerns other than a dismissal of the action. The 14-day limitation of time for a motion for reconsideration under

Local Rule 6.3 is guided by such considerations.

If the Court were to grant Defendants' request to reconsider its corresponding exclusions of time using the structure created by Defendants' strategic approach to this motion practice, it would set a dangerous precedent. Indeed, it would encourage future defendants to allow potentially erroneously granted exclusions of time to run, and to only challenge the exclusions of those periods once the 70 day clock had expired. In other words, like Defendants here, future defendants would be incentivized to invite prejudice onto themselves, so that they could later object to that very prejudice. This is precisely the sort of gamesmanship that Local Rule 6.3 protects against, and that the Speedy Trial act "was not meant" to permit. The Court is not willing to reconsider an exclusion of time 89 days after the most recent exclusion of time at issue. The application is untimely. Moreover, the decisions to exclude Periods 1 and 2 were sound when made, and the standard for reconsideration has not been met.

### 3. The Exclusions of Periods 1 and 2 from the Speedy Trial Clock Were Well Founded

Were the Court to evaluate Defendants' motion on the merits, it would be denied. When evaluating a motion to reconsider, the burden is on the moving party to point to new controlling law or new evidence which warrants reconsideration of the Court's prior ruling. *United States v. Almonte*, 2014 WL 3702598, at *1. Defendants have provided the Court with no new law relevant to the Court's potential reconsideration of either the Period 1 or Period 2 exclusions. In fact, Defendants provide no law that at all supports the proposition that a court can retrospectively reconsider a prior exclusion of time, nor any law which would provide the standard for such an analysis. Instead, the defense rests their arguments on the well-known limitations imposed on the Court's capacity to exclude time in the ends of justice by Subsection (h)(7)(C). *See* Defs.' Mot. Indeed it was the Government, not the defense, who supplied the Court with *United States v. Esquilin*, the only case supplied by any party which addresses the interaction between the Government's failure to comply

with discovery rules and the STA.  Gov. Opp. Mot. (ECF No. 328) at 16 (citing *United States v. Esquilin*, 205 F.3d 1325, 2000 WL 232162 (2d Cir. 2000) (unpublished).[8]  The Court explores the applicability of *Esquilin* later in this opinion.

### a. Defendants have not Submitted New Facts Warranting Reconsideration of Either Exclusion.

The facts presented in Defendants' motion do not warrant reconsideration of either period.

Period 1 was excluded due to a lengthy adjournment of trial, to permit the defense time to review the Government's production.  The Court considered the length of the adjournment to be "extraordinary" and granted it over the "strenuous" objection of the Government.  Indeed, it was the defense who argued that the Period 1 adjournment was necessary, and that they could not adequately prepare for trial without a nearly yearlong adjournment.  May 12, 2017 Tr. at 21.  Unsurprisingly, as the benefits of the Period 1 adjournment inurned to the defense, the defense consented to the Period 1 exclusion.  *Id.* at 39-40.  Regardless, Defendants argue the Court's exclusion of Period 1, and the defense's consent to that exclusion, was premised on the Government's representation that discovery was nearly complete, and that therefore, when the Government's proffer proved inaccurate, Defendants' consent should be vitiated and the Court should reconsider its exclusion.  Defs.' Mot. at 16-17.  Defendants cite to, and the Court is aware of, no law which supports Defendants' position.[9]  However, assuming *arguendo* that the Subsection (h)(7)(C) standard can be freely applied retrospectively, the Court still would not grant Defendants' request.  Simply put, the fact that the Government's proffer was ultimately proven to be incorrect does not imply, let alone carry Defendants' burden to prove, that the Period 1 adjournment was due

---

[8] As an unpublished decision, *Esquilin* has limited precedential value.  Nevertheless, the Court proceeds assuming, *arguendo*, that *Esquilin* would be controlling law, were it applicable.

[9] Defendants' argument further reinforces the serious policy concerns raised by untimely motions to reconsider exclusions of time.  The defense argues that if the Court had been aware of the full facts and circumstances, "it would have set a new deadline for discovery and would have granted a far shorter continuance." Defs.' Mot. at 17.  Of course, the Court cannot today make such retrospective alterations to its management of this case.  However, if Defendants had moved within 14 days of the exclusion they sought reconsideration of, such alterations might still have been possible.

to an unjustifiable lack of diligence on the part of the Government, particularly in a complex document-heavy case such as this one.

The Period 2 exclusion was also properly granted and served the ends of justice. As described above, Defendants asserted that large volumes of wiretaps, GPS data, and *Brady* materials had not previously been disclosed. Defendants further asserted that they could not effectively prepare for trial, and that exclusion of the evidence was not an option. The standard remedy for late production of discovery material is either a continuance, or exclusion of the evidence. *See* Fed. R. Crim. Proc. 16(d)(2); *see also United States v. Marshall*, 132 F.3d 63, 65 (D.C. Cir. 1998). The Court could not exclude the evidence at issue as it was the defense, not the Government, who benefited from that evidence. *See* May 11, 2018 Tr. at 82-83. Accordingly, the Court continued the case—not just for the weeks originally proposed by the Court, but by the months requested by Defendants. *Id.*

On May 11, 2018, when the Court excluded Period 2, the Court was aware that approximately 4,000 wiretap files had not been timely produced. May 11, 2018 Tr. at 27. The Court was also informed that the primary cause for the Government's failure to produce those files was that certain files were categorized as something other than pertinent or non-pertinent, while only pertinent and non-pertinent wiretap files were produced. *Id.* at 8-9, 25. And the Court had been alerted to the litany of non-Wiretap Issue related discovery concerns expressed by counsel for Defendant Reichberg in their May 9, 2018 letter, which substantially overlap with the facts alleged in Defendants' motion. Reichberg lttr., May 9, 2018 (ECF No. 273); Defs.' Mot. Accordingly, when the Court excluded Period 2, the Court was aware of the key facts which Defendants argue indicate that the Period 2 exclusion was the result of a lack of diligent preparation on the part of the Government.

At the time of the Court's May 11, 2018 exclusion of time, it expressed its continuing concerns regarding the Government's production. But while the Court was troubled by the

Government's failure to produce the entirety of the wiretap evidence in a timely fashion despite their multiple representations to the contrary, and later questioned the diligence of the Government in that regard, the Court did not find that the attorneys for the Government had demonstrated an unjustifiable lack of diligence in their preparation—particularly given the complexity and scope of discovery in the case as a whole, and that some of the recently produced material, such as the production of email accounts recently seized by the Government and the contents of electronic devices which the Government had only recently been able to decrypt, were the fruit of an ongoing investigation into Defendants, and could not have been practicably disclosed any earlier. May 11, 2018 Tr. at 54-56; *see* May 11, 2018 Tr. 36; Reichberg lttr., May 9, 2018 (ECF No. 273). No party suggested to the Court that the Government's conduct had been undertaken in bad faith; and the Court had no evidence of the Government's bad faith at the time. The Court did not make those express findings on the record, but they were considered by the Court and are implicit in the Court's decision to exclude time is a determination that the exclusion complied with Subsection (h)(7)(C). *See Tunnessen*, 63 F.2d. at 78 ("the precise reasons for the decision [to exclude time] need not be entered on the record at the time the continuance is granted.").

> **b. No New Law Supports Reconsideration: The Effect of *Esquilin***

Defendants pointed to no law that should drive reconsideration of the Court's decision. As noted above, it was the Government who directed the Court to *Esquilin*. In any event, the holding of that case does not undermine the Court's May 11, 2018 determination. The structure of the analysis undertaken in *Esquilin*, however, underscores the issue with Defendants' request that the Court reconsider a Subsection (h)(7) exclusion of time long after it was granted, and their strategic decision to bring this motion long after the STA period had run.

There are some similarities in the underlying facts in *Esquilin* and the facts presented here. "On October 23, 1996, the [*Esquilin*] prosecutor assured the court that the government had

completed its Rule 16 production," and so Mr. Esquilin's trial was set for July 14, 1997. *Esquilin*, 2000 WL 232162 at * 1 (2d Cir. 2000). However, on June 16, 1997, the Government began to produce additional discovery materials, including a box of evidence that the Government asserted it had "misplaced" and "unintentionally withheld." *Id.* Mr. Esquilin "moved for an order dismissing the charges or, alternatively, precluding use of the new discovery materials at trial." *Id.* The trial court granted a continuance until October 1, 1997. *Id.* "On November 3, 1997, following a hearing on the government's delayed production of the Rule 16 material, Judge Wood found credible the original prosecutor's testimony that one box of material had been inadvertently misplaced and discovery material within it unintentionally withheld. Consequently, on November 6, 1997, Judge Wood denied Mr. Esquilin's motion to dismiss the charges and for alternative relief." *Id.* The trial was ultimately rescheduled to November 10, 1997. *Id.*

As of July 14, 1997, 48 days remained on Mr. Esquilin's speedy trial clock, "[t]herefore his claim boil[ed] down to a contention that the speedy trial clock should have run during the continuance from July 14, 1997 to October 1, 1997." *Id.* at *2. The relevant period in *Esquilin*, was excluded due to the "delay due to pre-trial motions" rather than in the ends of justice pursuant to Subsection (h)(7). *Id.*

The Second Circuit upheld the trial court's denial of Mr. Esquilin's motion, and in so doing confirmed that "Government failure to comply with discovery rules can prevent exclusion of time from speedy trial calculations if that failure is chronic or in bad faith." *Id.* at *2 (citing *United States v. Anderson*, 902 F.2d 1105, 1109 (2d Cir.1990) (emphasis added).

The standard described by the Second Circuit in *Esquilin* does not displace the Court's exclusion here. First, in the context of this motion for reconsideration, it is not new controlling law; indeed, as a summary opinion, is not binding precedent. Second, as already noted, *Esquilin* (and the cases upon which it drew) involved the exclusion of time pending briefing and consideration of a

motion under Subsection (h)(1)(D). *Id.* It does not expressly construe the meaning of "lack of diligent preparation" by the Government in the context of an exclusion of time under Subsection (h)(7).[10]

What is most worthy of note here is that the analysis in *Esquilin* was undertaken in response to a motion that was timely brought by the defendant in that case. The decision does not support Defendants' request here for the reconsideration of a long-past exclusion of time, based on later developed facts. Instead, it points the way to a reasonable alternative approach, rejected by Defendants' strategic decision to lie in wait in this case.

In *Esquilin* the defense moved on STA grounds prior to the relevant adjournment and exclusion of time, and the period at issue was excluded under Subsection (h)(1)(D) which automatically excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." The trial court in *Esquilin* was not asked to reconsider a prior exclusion of time, as the defense asks the Court to do here. Rather, it was asked to stop excluding time prospectively for the period during which a timely filed motion was under consideration. Because the relief sought in *Esquilin* was prospective, the trial court was able to promptly hold an evidentiary hearing on the issue, and was in a position to manage the case going forward responsive to the STA issues raised by the defense. On the other hand, the relief sought by Defendants in this case is inherently retrospective, and, due to the untimely nature of Defendants' motion, the Court is not left in a position to manage the case responsively to Defendants' motion. Nor does Defendants' delayed retrospective attack on the prior exclusions leave the Court the opportunity to conduct a hearing into the causes of the delay.

It is perhaps unsurprising that Defendants chose not to point to the case in their moving

---

[10] Assuming for these purposes that the *Esquilin* "bad faith or chronic" standard applies in this context, as suggested by the United States, the Court did not have a basis to find that either of those triggers had been met on May 11, 2018.

papers.  *Esquilin* points the way to address the concerns articulated by Defendants here:  a timely motion to dismiss, potentially filed in conjunction with a timely motion to reconsider or terminate a prior exclusion under Subsection (h)(7), and a concomitant exclusion under Subsection (h)(1)(D).[11]

### B.  Defendants' Constitutional Right to A Speedy Trial

Defendants also allege that the Government's actions have deprived them of their constitutional right to a speedy trial.  The Court disagrees.

In *Barker v. Wingo*, 407 U.S. 514 (1972) the Supreme Court articulated a four factor test for determining the whether a defendant's constitutional right to a speedy trial had been infringed:  the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.* at 530.  Applying those factors, the Court finds that Defendants' constitutional right to a speedy trial was not infringed in this case.

When trial commenced on November 5, 2018 28-months had passed since Defendants' indictment.  While that is a lengthy amount of time, it is not out of line with the duration of the pre-trial phase of other complex cases involving multi-year conspiracies and relying on wiretap evidence.  *See Flowers v. Warden, Conn. Corr. Inst.*, 853 F.2d 131, 133 (2d Cir. 1988) ("As to the first factor, length of the delay, we note first that the 17-month delay here, while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation.") (citing *United States v. McGrath*, 622 F.2d 36 (2d Cir. 1980) (24 months); *see also Barker v. Wingo*, 407 U.S. at 533-34

---

[11] Had the Defendants' followed the procedure in *Esquilin* by filing a motion requesting that the Court terminate the prior exclusion of time, and that time from the filing of the motion forward should not be excluded as the delay of trial was caused by chronic or bad faith conduct on the part of the Government, then their motion would have been squarely brought under *Esquilin.*  Even in that situation, however, the Court would still have been unable to grant Defendants relief.  Simply put, even if such a motion was granted, the Speedy Trial clock would not have elapsed by the time trial commenced.  As of the filing of the defense's motion on August 8, 2018, the only un-excluded time in this case were the twelve days between the July 7, 2016 indictment and the July 19, 2018 initial pre-trial conference.  Accordingly, there were 58 days remaining on the Speedy Trial clock when Defendants' motion was filed.  The period from and including October 4, 2018 to November 5, 2018 (when trial commenced) was excluded due to the poor health of counsel for Defendant Grant, with the consent of all parties.  The period between from August 8, 2018 to October 3, 2018 is 56 days.  Therefore, even if the Court found that the Government's conduct was both chronic and in bad faith, and accordingly did not exclude any time from the date Defendants' motion was filed through October 3, 2018, the Court could not dismiss this case as two days would remain on Defendants' Speedy Trial clock.

(over 5 years); *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir. 1988) (over 7 years); *United States v. Cyphers*, 556 F.2d 630, 636 (2d Cir. 1977) (33 months); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir. 1977) ("The delay here was quite lengthy approximately 58 months or just under five years but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found."); *United States v. Mejias*, 552 F.2d 435, 443 (2d Cir. 1977) (21 months); *United States v. McQuillan*, 525 F.2d 813, 818 (2d Cir. 1975) (26 months); *United States v. Lasker*, 481 F.2d 229, 237 (2d Cir. 1973) (2 years); *United States v. Fasanaro*, 471 F.2d 717 (2d Cir. 1973) (over 4 years); *United States v. Infanti*, 474 F.2d 522, 527 (2d Cir. 1973) ("[T]he length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."); *United States v. Saglimbene*, 471 F.2d 16, 18 (2d Cir. 1973) (6 years); *United States v. Schwartz*, 464 F.2d 499 (2d Cir. 1972) (4 ½ years). Therefore while the delay in this case has been long enough to warrant constitutional inquiry, it is not so long as to weigh in Defendants' favor given the complexity and circumstances and of this case. Accordingly, the Court finds this factor to be neutral.

Defendants first asserted their concerns regarding their right to a speedy trial on May 11, 2018. The assertion of the right, in reaction to the Wiretap Issue and the corresponding adjournment of trial, is neutral under the *Barker* framework. *Barker v. Wingo*, 407 U.S. at 531; *see United States v. Ghailani*, 751 F. Supp.2d 515, 529 (S.D.N.Y. 2010), *aff'd* 733 F.3d 29 (2d Cir. 2013) ("In practice, a defendant's demand for or failure to demand a speedy trial tends not to influence the analysis strongly except at the extremes.")

The Court is sensitive to Defendants' arguments that the delay in this case prejudices Defendants by straining their financial resources and subjecting them to the social consequences that follow a criminal indictment. However, in *Barker* the defendant "liv[ed] for over four years under a cloud of suspicion and anxiety" and "although he was released on bond for most of the period, he did spend 10 months in jail before trial"—facts the Supreme Court considered to be

"minimal[ly]" prejudicial because the defendant's ability to mount a defense was not compromised. *Barker v. Wingo*, 407 U.S. 514, 534 (1972). By comparison, Defendants have enjoyed their freedom throughout the pendency of their prosecution. The Court finds that the level of prejudice suffered by Defendants in this case does not rise to the level required to weigh in favor of their motion, and if anything this factor cuts against their motion.

Therefore, as Defendants themselves essentially admit, the only *Barker* factor truly at issue is the cause of the delay. Defs.' Mot. at 21. There is no question that Government's production issues contributed to the delay of trial in this case. The question now before the Court is whether the Government's failure to live up to its discovery obligations in this case constitutes misconduct of a constitutional dimension.

As a preliminary matter, the Government has proffered, and the Court has accepted, that the Government's failure to comply with its discovery obligations were inadvertent and not in bad faith. May 11, 2018 Tr. 32-36. Nor do Defendants' allege to the contrary. Defs.' Reply (ECF NO. 332) at 7 (arguing Government errors were chronic rather than in bad faith); May 11, 2018 Tr. at 73 (Government errors not the result of bad faith). In *Barker,* the Supreme Court observed that negligence, as compared to deliberate misconduct by the Government, "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker v. Wingo*, 407 U.S. at 531.

The Court is aware of only once case in which late production of discovery led to a dismissal on constitutional speedy trial grounds, *United States v. Govey*, 284 F. Supp.3d 1054 (C.D. Cal. 2018) (appeal pending). In *Govey*, the court described the prosecutorial misconduct at issue as demonstrating "deliberate indifference and reckless disregard for its constitutional discovery obligations." *Govey*, 284 F. Supp.3d 1061. Furthermore, the prosecution in *Govey* failed to make

"any inquiry" regarding exculpatory evidence which the Government "had to have known" existed. *Id.* Comparatively, in this case the Government's errors were not the product of deliberate indifference, reckless disregard or bad faith. And while some of the delay in this case was caused by the conduct of the Government, the Court also recognizes that this is a complex case, with expansive discovery. Moreover, the Court recognizes that the length of the delay is also, at least in part, the product of Defendants' requests for extended exclusions of time—the lengthy Period 1 adjournment, and the several months of extra trial preparation time that Defendants requested for Period 2. Thus, much of the delay inured to the benefit of—indeed was requested by—Defendants as it allowed them time to review document productions and prepare for trial. Accordingly, while the delay in this case is partially attributable to the Government's delayed production of discovery, the Court finds this factor to weigh at best only slightly in Defendants favor.

Weighing the *Barker* factors, the Court determines that while the Government's conduct in this case contributed to a delay in trial of this matter, that delay has not deprived Defendants of their constitutional right to a speedy trial. Indeed, much of the length of the delays here resulted from the Defendants' own requests. Accordingly, Defendants' motion to dismiss the case on constitutional speedy trial grounds is denied.

### C. Conclusion

"[T]he Speedy Trial Act was not meant to be applied so as to give 'gamesmanship priority over the practicalities of trial management.'" *United States v. Vasquez*, 1989 WL 82422 at *6 (quoting *United States v. Rush*, 738 F.2d at 505). Defendants here chose not to file a motion with respect to their concerns until long after the period prescribed by Rule 6.3 for reconsideration of either of the contested exclusions of time, and, instead, delayed their filing of a motion for months, until after the Speedy Trial clock would otherwise have run in its entirety.

Defendants presumably viewed a delayed attack on the Court's exclusion of time as an

advantageous stratagem here, but the implications of endorsing their strategy would be profound. Under Defendants' approach, later acquired facts could be used at any point (here, 453 days after the earliest exclusion at issue) after a Subsection (h)(7) exclusion of time to retrospectively attack that exclusion. Defendants attack an exclusion of time which they consented to (Period 1), and an exclusion of time to which they objected, but that they argued was necessary in order to provide effective counsel, and that corresponded to an adjournment of trial which was lengthened at their request (Period 2).

Under current practice, the usual remedy for late *Brady* disclosure is a continuance to permit the defendants time to prepare to meet it. If Defendants' approach was adopted, those continuances would be subject to subsequent impeachment, without temporal constraint, based on after-acquired facts regarding the reasons for the Government's faulty disclosures. Prior exclusions could be attacked as the product of "chronic" or persistent Government negligence based on information learned after the date of the exclusion, or Government conduct after that date. To guard against subsequent attack on the exclusion, a court might need to conduct extensive fact finding before granting a continuance in order to pin down the reasons for the late disclosure. Or it might simply grant fewer, or shorter continuances to meet such late disclosures. Defendants' gamesmanship with the Speedy Trial Act may have seemed advantageous to them here, but endorsing their approach could have a significant impact on trial courts' oversight of pre-trial management, and might harm the interests of defendants more broadly.

There is another, simple mechanism for defendants in this situation: a timely motion for reconsideration—the mechanism embraced by Local Rule 6.3 and consistent with *Esquilin*, but one strategically avoided by Defendants. For the foregoing reasons, Defendants' motion to dismiss the case is denied in its entirety.

The Clerk of Court is directed to close the motions pending at ECF numbers 319 and 322.

SO ORDERED.

Dated: December 14, 2018
New York, New York

_____
GREGORY H. WOODS
United States District Judge