IB5KGRA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

            v.                         16 Cr. 468(GHW)

JAMES GRANT and JEREMY
REICHBERG,

             Defendants.

------------------------------x

                                 November 5, 2018
                                 5:33 p.m.

Before:

                  HON. GREGORY H. WOODS,

                               District Judge

                       APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  JESSICA R. LONERGAN
     KIMBERLY J. RAVENER
     MARTIN BELL
     Assistant United States Attorneys


HAFETZ & NECHELES, LLP
     Attorneys for Defendant Reichberg
BY:  SUSAN R. NECHELES

MERINGOLO & ASSOCIATES
     Attorneys for Defendant Grant
BY:  JOHN MERINGOLO
     ANJELICA CAPPELLINO

IB5KGRA1

1          (A jury of 12 and 4 alternates was impaneled and

2     sworn)

3          (In open court; jury present)

4          THE COURT:  Thank you very much.  You can be seated.

5          So, ladies and gentlemen, from this time until you

6     retire to deliberate on your verdict, it's your duty not to

7     discuss this case and not to remain in the presence of any

8     other persons who may discuss this case in your presence.

9          The rule about not discussing the case with other

10    people includes discussions with each other.  So you should not

11    talk with each other about the case or any of the issues

12    involved in it.

13         I'm going to talk to you more about what the process

14    is tomorrow, but, basically, the parties can only put in their

15    case witness by witness and exhibit by exhibit, and it's very

16    important that you not reach a conclusion about any of the

17    issues in the case until all of the evidence is in.  So it's

18    for that reason that I ask you not to talk with each other

19    about the case until all of the evidence is in and you retire

20    to deliberate on your verdict.

21         You also should not communicate with anyone else about

22    this case.  If you want, you can tell your family members and

23    friends that you've been ordered not to talk about this case by

24    me.  You can tell them that you have been seated as a juror in

25    a criminal case in federal court, but beyond that, please do

IB5KGRA1

1    not talk about the case with anyone else.  When I say don't

2    talk about it, I should say don't communicate about it because

3    you also should not blog about it, or tweet about it, or write

4    about it on your Facebook pages, and don't communicate about

5    the case at all with anyone.  Again, this is to ensure that the

6    parties here receive a fair and impartial trial based solely on

7    the evidence that's presented here in court.

8            Now, as I told you earlier, the lawyers and the

9    parties will be here, you may see them out in the halls.  If

10   they don't talk to you, again, they're not being rude; they're

11   just following my instructions not to talk to you and not to

12   have any improper communications with you.

13           So, in order to help avoid the possibility of any such

14   improper communications, I'm going to ask you to begin each

15   morning in the jury room.  Mr. Daniels will show you where that

16   is.  You should not come into this courtroom.  You'll see

17   there's a separate, special entrance for members of the jury

18   that Mr. Daniels will show you momentarily.

19           So tomorrow morning, please be here, all of you, no

20   later than 9:45.  I expect to start as promptly as possible.

21   We can't start until all of you are here.  So if any one of you

22   is five, ten minutes late, it means that I and the lawyers and

23   the parties will have to wait until you arrive.  So please try

24   your hardest to be here on time.

25           Thank you very much for all of your patience during

IB5KGRA1

1    this process today.  I, again, appreciate it very deeply.  I'm

2    going to excuse you until tomorrow morning, when you should

3    come directly to the jury room, where Mr. Daniels will take you

4    now.

5                (Jury not present)

6                THE COURT:  Thank you very much, ladies and gentlemen.

7    You can be seated.

8                So, counsel, again, thank you for all the work that

9    you've done during the course of the day today.  I think that,

10   given the hour, we're going to need to adjourn.  Part of the

11   reason why I suggested that the jurors get here later tomorrow

12   morning is, in addition to the fact that it's Election Day, the

13   fact that I expect that there may be issues that the parties

14   wish to address with the Court prior to opening statements.

15               Let me say a few words about what it is that I expect

16   to do tomorrow before opening statements, in addition to

17   discussing any issues that the parties want to raise with me.

18               I will provide the jurors with, I'll call it, a set of

19   preliminary instructions.  The counsel who are here are all

20   very experienced and can expect what it is that I'm going to

21   talk to them about.  I expect to provide a short overview about

22   the topics of:  Impartiality, my role, the jury's role.  I

23   expect to say some words about what is and is not evidence,

24   including the traditional anecdote about circumstantial

25   evidence.  I'm going to talk to them about what is and is not

IB5KGRA1

1   evidence.  I'll provide them with some brief comments about the

2   evaluation of evidence.

3          I will then provide them with a brief statement

4   regarding the burden of proof, emphasizing that this is a

5   criminal case, and that it's the government's burden to prove

6   each defendant guilty beyond a reasonable doubt.

7          Then I will talk about some rules of conduct,

8   reiterating some of the issues that you already heard me talk

9   about.  I'll talk to them about the note-taking process.

10          Then I will introduce both the order of trial, and

11   then the parties' opening statements.

12          That bit of introductory commentary that I expect to

13   provide the jurors will probably last 15 minutes or so, perhaps

14   20, so I expect that that will take up some time before the

15   opening statements themselves.

16          So that's what I wanted to preview for you, and,

17   again, I apologize that we are unable to take up much

18   additional work now.  That said, I'd be happy to hear from the

19   parties if there are any particular issues that you'd like to

20   highlight for my attention before we adjourn for today.

21          Counsel for the government?

22          MS. LONERGAN:  Your Honor, only to say that we filed

23   something by email at lunch because ECF was down.  I have hard

24   copies here for the Court and for defense, but we will also

25   endeavor to put it up on ECF tonight, if we can figure out

IB5KGRA1

1    whatever technical problem is preventing us from doing that.

2    It's in response to at least one of the one portion of one of

3    the motions that was filed last night by counsel for defendant

4    Reichberg.

5            THE COURT:  It's the Bruton issue?

6            MS. LONERGAN:  Yes, it is, your Honor.

7            THE COURT:  Can I ask for a brief preview on that?

8    Because that did raise some concerns when I read Ms. Necheles'

9    letter.

10           MS. LONERGAN:  Your Honor, so Bruton and its progeny

11   are essentially focused on -- the word that is used in Bruton

12   is "confessions," and usually what's encapsulated in that are

13   incriminating statements by a nontestifying codefendant.  In

14   particular, the case law looks at the fact about whether the

15   statements that are sought to be offered by the nontestifying

16   codefendant inculcate the other defendant.  So a statement that

17   is totally nonincriminating or noninculpatory towards another

18   defendant, even if it mentions the other defendant's name, does

19   not pose a Bruton issue or a Crawford issue when it's issued

20   only against the defendant who made a statement.

21           In particular, the case law has held, has carved out,

22   that false exculpatory statements, while there's a legitimate

23   purpose for them to be offered against the defendant who made

24   them, usually are not going to create a Bruton issue until

25   there's shifting blame to someone else, so if they're shifting

IB5KGRA1

1    blame to a codefendant, clearly that would be a Bruton issue.

2              Here, however, the statements that we intend to offer,

3    whether they're either viewed separately -- statements one,

4    two, three and four, as we outline them -- or collectively, are

5    essentially either a false exculpatory or nonincriminating on

6    their face.

7              THE COURT:  Thank you.  I apologize.  I'll hear more

8    about this, and I will be better informed after I read your

9    letter.

10             What do you mean by false exculpatory?

11             MS. LONERGAN:  Yes, your Honor.

12             So the narrative that defendant Grant or the -- what

13   the government will argue is that the narrative that defendant

14   Grant provided, when he was interviewed by the FBI, was a false

15   exculpatory narrative.  In particular, he did not admit, of

16   course, to the crimes with which he is charged here; rather,

17   when asked about defendant Reichberg, he said, we have a

18   long-term friendship, we have a personal relationship, which,

19   by the way, are not points, I think, the defendants are

20   contesting; I think they in fact argued them before this Court,

21   and have said they raise a potential defense to the crime.

22             And then Grant --

23             THE COURT:  I'm sorry, I'll hear more about this and I

24   don't want to take too much of your time, but can you give me a

25   sense of whether or not the analysis here, as the government

IB5KGRA1

1    proposes it, requires that the Court make a determination

2    whether or not the exculpatory statement is false or true --

3              MS. LONERGAN:  No, your Honor.

4              THE COURT:  -- in order to assess those?

5              MS. LONERGAN:  I think what the analysis here turns on

6    is whether these statements incriminate Reichberg.  If they do

7    not incriminate Reichberg, then I do not believe that Bruton

8    applies, because the concern highlighted by the Supreme Court

9    in Bruton and its progeny is that, of course, a jury is

10   normally presumed to follow instructions, but when a defendant,

11   a nontestifying codefendant, makes a confession, admits to his

12   crimes, and implicates his codefendant in those crimes, that

13   that type of evidence is so -- I don't know what the word is --

14   "explosive" -- it's not the best word but it's the only word I

15   can think of right now -- that it is so powerful that, in that

16   narrow instance, a jury cannot be presumed to follow the

17   instruction to only consider the confession against the

18   defendant who made it.

19              However, when the statements do not on their face --

20   either (a) don't really even admit to the crime and (b) do not

21   incriminate the other defendant, the particular unique concerns

22   considered in Bruton are not availing, and, rather, the

23   statement -- rather, in that sense, when the jury is

24   instructed, you may only consider this statement against the

25   defendant who made it, here Grant, that because it's not such a

IB5KGRA1

1    powerful admission of guilt and implication of the codefendant

2    in guilt, that, in that circumstance, a jury can be presumed to

3    follow the instructions given to it by the Court.

4              THE COURT:  Thank you.  I will look at your letter and

5    look at case law in the interim.

6              Can I ask for a brief paragraph regarding the

7    government's view about what is an incriminating statement for

8    these purposes?

9              MS. LONERGAN:  Yes, your Honor.

10             An incriminating statement, again, the word that's

11   used in Bruton and the cases that follow is a confession.  So I

12   think, essentially, what that is, is a statement that admits to

13   elements or to participation in the crime.  Of course, it

14   doesn't have to be every element of the crime but, essentially,

15   somehow admitting to participation in the crime and

16   implicating, for the Bruton issue, implicating another

17   defendant in the commission of the crime.

18             THE COURT:  Thank you.  I will think about it more.

19   Just help me understand the argument.

20             Assume -- it's not this case.  Just help me think

21   about it.

22             MS. LONERGAN:  Yes, your Honor.

23             THE COURT:  Imagine it's a murder case and someone is

24   murdered in a particular house at a particular time.  If a

25   codefendant says that, my codefendant was in the house at that

IB5KGRA1

1    time, is that not incriminating, from the government's

2    perspective, using this analogy?

3              MS. LONERGAN:  So, your Honor, the Supreme Court has

4    actually addressed exactly these issues.  There are three cases

5    that I think that will be helpful for the Court on this point,

6    all of which we cite.  One is Bruton, the next one is

7    Richardson, and then there's a third one, Gray, which really

8    talks about redacted confessions.  I think Richardson is the

9    most instructive on this point.

10             So Richardson talks about the fact that sometimes

11   statements can, when they are put together with other evidence

12   in the case, may incriminate, but that what you're really

13   looking for is, is the statement incriminating on its face as

14   to the codefendant.  And it talks about what inferences should

15   or should not be drawn.  And they talk about a statement -- so,

16   for example, the example that the Court just gave, if the

17   defendant, who's nontestifying, says, I was at this house and

18   my codefendant was there but they used the name and they say,

19   for example, on the night of the murder, that that might very

20   well be an incriminating statement.

21             However, if there is still something where, let's say,

22   it's a case unlike this one, where the defendants are not

23   admitting that they are friends, the defendants in fact maybe

24   alleged that they never knew each other, and the statement

25   says, oh, yeah, I met this person, on its face, it may be

IB5KGRA1

1    linked with other evidence that you hear in the case, that the

2    fact that the two defendants knew each other could be

3    incriminating, but that, on its face, the statement just says

4    defendant A and defendant B, yeah, I knew defendant B.

5              THE COURT:  Thank you.

6              Counsel for defendants -- I'll turn to you first,

7    Ms. Necheles -- and I apologize because I don't believe that we

8    have time now to engage in a full conversation about this, but

9    I've just taken the opportunity to hear from the United States

10   before I retire to consider these issues and to review the case

11   law.  Are there any arguments that you'd like to put in front

12   of me so that I am consider them as I am reviewing the

13   submissions?

14             MS. NECHELES:  Yes, your Honor.

15             I think that Ms. Lonergan misunderstands --

16             THE COURT:  Can I ask you to move the microphone a

17   little closer to you, please.

18             MS. NECHELES:  Sure.

19             I think she misunderstands the case law, and it is

20   confusing.  I believe that what the case law is, is that if a

21   statement is facially inculpatory -- in other words, it names

22   the defendant -- then it doesn't matter how minor inculpatory

23   it is.  It doesn't matter that it only will convict you if it's

24   put together with other evidence.  And, of course, that makes

25   sense, because the Court should not be determining like, oh,

IB5KGRA1

1    this is only a little piece of evidence and therefore it

2    doesn't violate his Sixth Amendment rights.

3         What the Supreme Court and other courts have said is,

4    if it is not facially inculpatory, if you can redact the

5    defendant's name, then even if you can put it together with

6    other evidence -- and that's what Ms. Lonergan was talking

7    about -- then you don't have to exclude it.  But that is only

8    if it's not facially inculpatory.

9         If it is facially inculpatory, I believe you must

10   exclude it, except there is one little exception -- and I did

11   not read both of the cases, and that she just cited one of

12   these today -- in Trapiano what they talk about, Trapiano was,

13   if it's just a statement where the defendant was saying I don't

14   know those people, if Jimmy Grant had said, I don't know

15   Jeremy, well, that would be one thing.  He said the opposite.

16        And, your Honor, I think it's pretty clear, there are

17   four statements here.  Only one of them does the government say

18   is a false exculpatory.  And I don't care if that false

19   exculpatory comes in.

20        The other three they want to put in for context, to

21   show the whole picture, whatever, but all they're saying is, I

22   want to put in all of Jimmy Grant's statements.  And there is

23   no question that you cannot take Mr. Reichberg's name out of

24   it, because otherwise they would just -- the whole point, he's

25   saying, I met with Reichberg, I knew Reichberg.  And it's true

IB5KGRA1

1     there will be other evidence of that at trial, which I think

2     points to the fact that they don't need this evidence; there

3     will be other evidence.

4                THE COURT:  Good.  Thank you.  I appreciate that.

5                One other thing before we recess for the day relates

6     to the government's letter that was submitted in the early

7     morning last Friday or late Thursday evening, which is

8     effectively a motion in limine regarding a number of the

9     defendants' anticipated exhibits and experts.  Since the time

10    of our last conference I have had the opportunity to actually

11    look at that submission.  I now have a better understanding of

12    what it is that it's doing.

13                It is functionally an extended motion in limine with

14    respect to a number of those pieces of evidence and witnesses.

15    I would want to invite the defense to respond to it in writing

16    before ruling on the arguments raised in it.  So I wanted to

17    talk briefly about a process that we could use to permit the

18    defense to respond to those arguments.

19                MS. NECHELES:  So, your Honor, I think virtually all

20    of that evidence will go to the Reichberg -- or the Rechnitz

21    cross-examination.  I don't know when he will be taking the

22    stand.  Maybe if we could get some clarity on that, we could

23    have a better idea of what the timing is.

24                So what we were thinking of doing, your Honor, is

25    putting in some general principles and then, because I think

IB5KGRA1

1     that until we hear really a lot of his direct, I can't even

2     tell you what is -- what we will really be using the stuff for.

3     I put all of this in out of an abundance of caution.  I'm not

4     sure what I will be using.  I haven't heard the direct.

5               We also have real issues now.  I don't know what the

6     government plans to do about the de Blasio stuff.  Late, late

7     last night/early this morning, they put in a letter saying

8     something.  I don't really know what it said.  It said, maybe

9     we won't put it in, maybe we will.

10              THE COURT:  Thank you.

11              So, counsel, I will talk to you, I think, tomorrow

12    morning about a process to put in front of me defense's

13    arguments related to the government's, what I'll call, the

14    motions in limine and that letter motion.  We can, I believe,

15    discuss that fruitfully tomorrow.  Thank you for the context.

16              We should talk briefly about the government's letter

17    from yesterday about the de Blasio testimony.  From your

18    comments, Ms. Necheles, I take it that you have not had a lot

19    of time to consider the issues raised there.  I have not had an

20    extensive amount of time to do so either.

21              I would like to discuss this issue, if we can,

22    effectively, briefly now, but I don't know if the defense is in

23    a position to do so meaningfully.

24              MS. NECHELES:  Well, I'm not sure where the government

25    is at.  Are they proposing that they will keep out all the

IB5KGRA1

1    evidence on de Blasio?

2            THE COURT:  Thank you.

3            Counsel for the United States, can I hear from you.

4            MS. RAVENER:  Yes, your Honor.  One moment.

5            THE COURT:  Thank you.  Please take your time.

6            (Pause)

7            MS. RAVENER:  Yes, your Honor.  Thank you for the

8    opportunity to address that.

9            I think, from the government's perspective, we'd like

10   to take this up with the defense in the first instance.  We

11   submitted the letter to the Court so that the Court would be on

12   notice, particularly with respect to any possible impact on

13   opening statements, that we were seriously considering offering

14   this as a possible resolution to the defense.

15           It is not so simple as saying simply all of this

16   evidence will be in or out -- it touches on several areas --

17   and so we'd like the opportunity to discuss that tonight and

18   raise that with the Court tomorrow.

19           THE COURT:  Good.  Thank you.  I'll grant you that

20   opportunity.

21           Please do confer with counsel for defendants.  My

22   sense from your letter was that was what you were putting on

23   the table for further discussion.  Among the things that I

24   expect that the parties will discuss is how this would be

25   framed in light of Mr. Meringolo's comments about the other

IB5KGRA1

1    alternative approach that we began to probe toward during our

2    last conference.  The parties are aware of that concern, and

3    I'm sure that you can address it meaningfully during your

4    conversations.

5              Is there anything else that we should talk about here?

6              MS. NECHELES:  Yes, your Honor.  I believe that the

7    government intended to call the witness who was going to

8    testify about Jimmy Grant tomorrow, about his statement

9    tomorrow.  That was on the witness list.  And we would also ask

10   for the witness list for Wednesday.

11             THE COURT:  Thank you.

12             Counsel?

13             MS. LONERGAN:  Your Honor, that's correct.  And the

14   information about this interview with Grant is also in the

15   government's opening statement.  The government will have a

16   version of its opening statement that -- we'll have multiple

17   versions of the opening statement in order to comply with any

18   ruling provided by the Court, but, if possible, given that we

19   were planning to call that witness tomorrow quite early in our

20   order of proof, and so, if it's possible, it would be helpful

21   to have clarity on this tomorrow morning.  If not, and if the

22   Court knows now that the Court doesn't think we can resolve

23   this issue tomorrow morning, then we will just have to do some

24   witness reshuffling, which we can do, but that would be helpful

25   for us to have sense of the Court's position.

IB5KGRA1

1          THE COURT:  Thank you.

2          I don't have a sense of the right answer to this

3     question at this time to provide you guidance either as to

4     whether or not I believe that the statements can come in or if

5     they should stay out.  I think I need to review the

6     government's supplemental briefing on this issue and to review

7     the cases that you pointed me to.  I don't think that I can

8     give you a clear sense now in one direction or another,

9     unfortunately, at this time.

10         MS. LONERGAN:  Your Honor, I don't think that's what

11    we're asking for; just if the Court anticipated whether we

12    would be able to resolve this tomorrow morning between 9:00 and

13    9:45.  If the Court thinks it's not at all possible that we'll

14    resolve this tomorrow morning, then that will lead us down one

15    road.  If the Court thinks, clearly without a commitment, but

16    if the Court thinks it's potentially feasible to resolve this

17    in the morning, then we'll proceed in another course.

18         THE COURT:  Thank you.  I think it's potentially

19    feasible.  I will spend time between now and tomorrow morning

20    trying to review these issues.

21         MS. LONERGAN:  Thank you.

22         THE COURT:  And to the extent possible, I will work to

23    resolve it before the opening statements tomorrow, during the

24    early discussions.

25         MS. LONERGAN:  Thank you very much, your Honor.

IB5KGRA1

1          THE COURT:  Good.  Thank you.

2          Anything else?

3          MS. NECHELES:  Your Honor --

4          THE COURT:  I'm sorry, Mr. Meringolo was standing.

5          MR. MERINGOLO:  Sorry, Judge.

6          THE COURT:  That's fine.

7          MR. MERINGOLO:  Just a few things.

8          The Grant team didn't our hard copy of all the

9   government exhibits.  We would like that tomorrow before the

10  opening, if possible.

11         THE COURT:  Thank you.

12         Counsel for the United States, do you have such a copy

13  for defendant Grant?

14         MS. LONERGAN:  Your Honor, we didn't understand that

15  to be his request, but now that we understand that, we will

16  endeavor to get it to him by tomorrow's opening statements.

17         THE COURT:  Thank you.

18         I have two copies of the government's exhibits.  I'd

19  be happy for you to have one of them today, if that would be

20  helpful to the defense.

21         MR. MERINGOLO:  Thank you.

22         Just so you know, we planned to open on the de Blasio

23  also.  I don't have to, and you can rule two minutes before I

24  do de Blasio opening; it's not going to affect --

25         THE COURT:  Thank you.

IB5KGRA1

1          MR. MERINGOLO:  But we plan to do that.

2          THE COURT:  Thank you very much.  I appreciate the

3   alert.

4          My recommendation is that the parties discuss the,

5   I'll call it, opportunity presented by the government's letter

6   from yesterday.  That may take that issue potentially off the

7   table.  It may.

8          MR. MERINGOLO:  Thank you, Judge.

9          THE COURT:  What I would recommend is that you prepare

10  with the prospect that I would ask you not to open on that

11  issue at this time.  It appears there are a number of issues

12  that we will need to hear about, in order to have for me to

13  have comfort that the mayor's testimony would come in, and I

14  don't want you to be in a position you have argued something to

15  the jury that is ultimately excluded.  I can't commit to you at

16  this point that the testimony will come in.

17         MR. MERINGOLO:  The only thing -- and the government

18  knows this because it's happened in the other trial -- is what

19  the cooperating witness did was doctor emails with the mayor

20  and then send it on to various business associates or potential

21  business partners, just to make himself look good.  I would

22  believe that's --

23         THE COURT:  Thank you very much.

24         I don't understand that to be within the scope of the

25  concerns that I had previously.  In other words, if the

IB5KGRA1

1    testimony of Mr. Rechnitz is that he falsified emails with the

2    mayor, and that that's part of the anticipated testimony by the

3    witness, by this witness, that's not the concern that I was

4    commenting on.

5            MR. MERINGOLO:  But that's what I would be opening on.

6            THE COURT:  Thank you.  Understood.  Thank you for

7    framing that.

8            Counsel for the United States, I don't believe that I

9    have a concern regarding that issue being raised in the opening

10   statements.  I thought that counsel was alluding to the

11   prospect of testimony by the mayor in his opening.

12           MR. MERINGOLO:  No, Judge.  That's fine.

13           THE COURT:  Thank you.  That's fine.

14           Counsel for the United States, any concerns about that

15   issue coming in the opening?

16           MS. RAVENER:  One moment, your Honor.

17           THE COURT:  Thank you.

18           MS. RAVENER:  Your Honor, we don't anticipate that

19   being an issue.  I will just note, this is one of the ways in

20   which this issue requires more fulsome discussion between the

21   parties before we can craft a solution.

22           THE COURT:  Good.  Thank you very much.  I appreciate

23   the parties' work on that and that all of you are very deeply

24   familiar with the facts in a way that I am not.

25           Anything else that we should take up now?

IB5KGRA1

1    Ms. Necheles?

2            MS. NECHELES:  Your Honor, it strikes me that even if

3    your Honor were to rule on the Bruton issue, we would then have

4    to deal with it -- should your Honor allow it in, we would have

5    to deal with issues about the scope of it and also any sort of

6    limiting instructions.  So I think it's kind of hard to say

7    that the witness will be testifying on this tomorrow.

8            THE COURT:  Thank you.

9            I think that is a fair comment that we may need to do

10   additional work to frame the testimony and to provide any

11   limiting instruction.  Should it come in, I will put that in

12   the bucket of issues that may lead the government to consider

13   shuffling their witness list for tomorrow or to defer this

14   testimony until a date, when we have the opportunity to fully

15   air these issues.

16           MS. RAVENER:  Your Honor, we will, of course, adhere

17   to any determination like that by the Court.  I think I would

18   just note, from the government's perspective, we don't think

19   the issue, hopefully, will require that much extensive

20   deliberation and that we can proceed as planned.  This has been

21   this evidence has been known to the defense for approximately

22   five months.

23           THE COURT:  Thank you.  Understood.

24           I just can't take a position on it at this time

25   because I don't have enough information about the arguments.

IB5KGRA1

| | |
|---|---|
| 1 | Anything else we should talk about? |
| 2 | MS. NECHELES:  Yes, two things, your Honor. |
| 3 | THE COURT:  Yes, counsel. |
| 4 | MS. NECHELES:  Will the defense be able to use the |
| 5 | back room here, for storage, for using for sort of us meeting |
| 6 | during breaks? |
| 7 | THE COURT:  Thank you. |
| 8 | MR. BELL:  Your Honor, I have a childcare issue.  May |
| 9 | I be excused? |
| 10 | THE COURT:  You may. |
| 11 | Yes, counsel for defendant, I don't have an issue with |
| 12 | the defendants using one of those rooms.  Please be mindful of |
| 13 | the fact it may not always be locked, so you may not want to |
| 14 | leave things there, but I don't mind if you use that as a place |
| 15 | to confer. |
| 16 | MS. NECHELES:  Okay. |
| 17 | And, your Honor, just with respect to the -- I dispute |
| 18 | the idea that we had this for five months.  This was an issue |
| 19 | that the government specifically said -- |
| 20 | THE COURT:  Thank you.  I saw your point in the |
| 21 | letter. |
| 22 | MS. NECHELES:  So I don't want to get into that. |
| 23 | But with respect to the witness list for Wednesday? |
| 24 | THE COURT:  Thank you. |
| 25 | Counsel for the government? |

IB5KGRA1

1          MS. RAVENER:  Your Honor, we'd like to take a look at

2     the calendar, given this possible discovery shuffling, and we'd

3     be happy to provide it tonight to defense.

4          THE COURT:  Thank you very much.

5          MS. NECHELES:  Your Honor, the government have made a

6     commitment they will provide it by the end of the court day.

7     We have to prepare for tomorrow for the next day.  They're

8     giving us very short notice, as it is.

9          MS. LONERGAN:  Your Honor, they have had the whole

10    weekend our anticipated witnesses for tomorrow.  So I don't

11    really -- it's well before the end of the court day, but we've

12    all been in court all day, and we're now working on the

13    witnesses for tomorrow, but for Wednesday, I'm not

14    understanding what the issue is today.

15         MS. NECHELES:  That's what I'm asking about.

16         THE COURT:  Thank you.

17         Counsel, please confer about this issue.  The

18    government did make a commitment, and I will expect that they

19    will live up to it.

20         One brief scheduling issue regarding Wednesday:  I

21    have a commitment that I made long before this trial was

22    scheduled -- certainly before it was scheduled for this set of

23    dates -- that's going to require that I end the court day a

24    little bit early on Wednesday, around 2:00.  I'm speaking on a

25    panel.  So I expect to end early on Wednesday, to the extent

IB5KGRA1

1   that that's at all of interest to the parties.

2                  MS. NECHELES:  Sure, your Honor.

3                  Your Honor, just my understanding:  My understanding

4   was that the government had made a commitment, and what your

5   Honor expected was by the end of the court date, not tomorrow's

6   witnesses but the witnesses for the day after, was my

7   understanding of what we would be getting.

8                  THE COURT:  Thank you.

9                  Counsel?

10                  MS. RAVENER:  Again, your Honor, we're happy to

11   provide it to Ms. Necheles and counsel for defendant Grant as

12   soon as we get back to our office and look at the schedule and

13   whether any changes need to be made.

14                  THE COURT:  Good.  Thank you.  I understand the

15   government is going to provide that list to counsel for

16   defendants today.

17                  Counsel for Mr. Grant, the extra copies of the

18   exhibits that I said I'd be happy to give to your side today is

19   in my chambers, so after I leave here, you should feel free to

20   have somebody come down to my chambers, and somebody from my

21   chambers will give you the set of binders.

22                  MR. MERINGOLO:  I can come in the morning, Judge.

23                  THE COURT:  That's fine.  I'll give it to you today.

24   If you don't need it tonight, you'll get it from the government

25   tomorrow.

IB5KGRA1

1          MR. MERINGOLO:  May I speak to them now?

2          (Pause)

3          MR. MERINGOLO:  Your Honor, they're going to give it

4   to me in the morning.  Thank you for the courtesy.

5          THE COURT:  Good.

6          Anything else we need to take up now?

7          Thank you, all, very much for all of your work today.

8   We're in recess.  I'll see you tomorrow morning at 9:00 thank

9   you, all.

10          MS. RAVENER:  Thank you, your Honor.

11          (Adjourned to November 6, 2018 at 9:00 a.m.)

12                              * * *

13

14

15

16

17

18

19

20

21

22

23

24

25