IBRKGRA1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                    New York, N.Y.

4              v.                                16 CR 468 (GHW)

5   JAMES GRANT and JEREMY
    REICHBERG,
6
                   Defendants.
7
    ------------------------------x
8
                                                 November 27, 2018
9                                                9:08 a.m.

10
    Before:
11
                        HON. GREGORY H. WOODS,
12
                                                 District Judge
13

14

15
                             APPEARANCES
16
    GEOFFREY S. BERMAN
17        United States Attorney for the
          Southern District of New York
18   BY:  JESSICA R. LONERGAN
          KIMBERLY J. RAVENER
19        MARTIN BELL
          Assistant United States Attorneys
20
    HAFETZ & NECHELES, LLP
21        Attorneys for Defendant Reichberg
     BY:  SUSAN R. NECHELES
22
    MERINGOLO & ASSOCIATES
23        Attorneys for Defendant Grant
     BY:  JOHN MERINGOLO
24        ANJELICA CAPPELLINO

25   ALSO PRESENT:  JEFFREY G. PITTELL, CJA Counsel (Curcio Only)

IBRKGRA1

| | |
|---|---|
| 1 | (Trial resumed; in open court; jury not present) |
| 2 | THE COURT:  Counsel, thank you very much for being |
| 3 | here timely this morning. |
| 4 | Before we begin, is there any issue that any party |
| 5 | would like to bring to my attention? |
| 6 | MR. MERINGOLO:  There's a big issue. |
| 7 | MR. BELL:  I think so, Judge, yes. |
| 8 | MR. MERINGOLO:  Judge, I'd like to begin.  I'm sitting |
| 9 | outside in the hallway with five people -- four or five people. |
| 10 | Mr. Bell barges out, and threatens me, and tries to walk |
| 11 | towards me in a very confrontational way, so I pushed him away. |
| 12 | I did not pop him in his mouth, but I pushed him away from me. |
| 13 | Let's get the videotape.  There's four witnesses, five |
| 14 | witnesses here, let's get their statements.  It was unnecessary |
| 15 | coming out trying to threaten me. |
| 16 | THE COURT:  Can I ask you, Mr. Meringolo, would you |
| 17 | mind just providing me with a brief description of what it is |
| 18 | that you saw happen?  I heard the overview, but if you can |
| 19 | provide me some more specifics. |
| 20 | MR. MERINGOLO:  That's it, Judge.  I don't know what |
| 21 | caused Mr. Bell to run out of your courtroom to go and threaten |
| 22 | me in the hallway while I was talking to three people.  I have |
| 23 | no idea what caused him to do that. |
| 24 | THE COURT:  Thank you. |
| 25 | And when you say threatened? |

IBRKGRA1

| | |
|---|---|
| 1 | MR. MERINGOLO:  Threatened.  Threatened.  Threatened, |
| 2 | Judge. |
| 3 | THE COURT:  Your recollection of the statement was |
| 4 | what? |
| 5 | MR. MERINGOLO:  It was a threatening statement. |
| 6 | That's what I recall.  And there are five witnesses, also.  Or |
| 7 | four witnesses. |
| 8 | THE COURT:  Thank you. |
| 9 | Counsel for the United States? |
| 10 | MR. BELL:  I guess that's me, Judge.  I'm happy to |
| 11 | speak about this and what precipitated it. |
| 12 | As you're aware, we brought Mr. Rechnitz to a space |
| 13 | behind the courtroom largely for his protection, because he's |
| 14 | been the subject of some harassment.  I can't quite say I |
| 15 | anticipated where the harassment would come from this morning. |
| 16 | We asked Mr. Daniels whether we could bring Mr. Rechnitz back |
| 17 | to the room here in advance of this morning's proceedings. |
| 18 | Mr. Daniels told us that was the case, and so we had two FBI |
| 19 | agents bring Mr. Rechnitz up from where he had been stationed |
| 20 | downstairs. |
| 21 | I wasn't present for this.  What I did learn, as |
| 22 | Mr. Rechnitz and the FBI agents were making their way through |
| 23 | the room, was that Mr. Meringolo -- |
| 24 | I'm sorry? |
| 25 | MR. MERINGOLO:  Keep going. |

IBRKGRA1

<table>
<tr><td>1</td><td>MR. BELL:  Judge?</td></tr>
<tr><td>2</td><td>THE COURT:  You can proceed.</td></tr>
<tr><td>3</td><td>MR. BELL:  Thank you.</td></tr>
</table>

1          MR. BELL:  Judge?

2          THE COURT:  You can proceed.

3          MR. BELL:  Thank you.

4          -- was that Mr. Meringolo apparently walked up to

5     Mr. Rechnitz and said something along the lines of:  You're a

6     disgrace, which is attorney misconduct that I've never heard

7     of, points for creativity.  This was something heard not only

8     by Mr. Rechnitz, but by the FBI agent and by Mr. Rechnitz's

9     counsel, Allen Levine, an officer of the court.

10         I was blown away by this.  I walked back from where I

11    heard this, the space in which Mr. Rechnitz had been secreted

12    through the courtroom, to find Mr. Meringolo and find out what

13    business he had speaking to Mr. Rechnitz in any way, much less

14    an intimidating one.  I came out to Mr. Meringolo and told him,

15    essentially, if you wake up and do something like that again,

16    you'd better apologize.  That's incredibly improper.

17    Mr. Meringolo --

18         MR. MERINGOLO:  Judge --

19         MR. BELL:  Excuse me.

20         THE COURT:  Mr. Bell, Mr. Bell --

21         MR. MERINGOLO:  Where are the cameras?  The cameras

22    are here.  Where are the FBI agents?

23         THE COURT:  I'm sorry.  Mr. Meringolo --

24         MR. MERINGOLO:  Let's put everybody on the stand.

25         THE COURT:  I'm sorry.  Mr. Meringolo, give us one

IBRKGRA1

```
 1    moment, and let Mr. Bell explain, and then I'll give you the
 2    opportunity to speak further.  Thank you.
 3              Please go ahead, Mr. Bell.
 4              MR. BELL:  Thank you, Judge.
 5              Mr. Meringolo, who had been surrounded by four, or
 6    five or so people, then burst through from that group, after I
 7    said that, approached me -- I was still a good ten feet away
 8    from him, pointing at him as I spoke -- and shoved me in the
 9    chest.  There was no contact on my part.  He came up to me, he
10    shoved me in the chest.  I know well where this happened is
11    covered by videotape because I have seen videotaped
12    confrontations in this space before.  In the past, they have
13    been from unhinged family members after a distressing
14    proceeding.
15              So, again, this is something new, but I think the
16    videotape will make it relatively clear what happened.
17              Mr. Meringolo talks about threatening statements.  He,
18    at that point, as he shoved me, uttered actual threatening
19    statements about how I'm lucky he doesn't drop me and things to
20    that effect.
21              Then, after Mr. Meringolo appeared in this courtroom,
22    where we were waiting for your Honor to appear, he said
23    essentially the same thing again.  I suspect your Honor may
24    have heard this because your Honor was waiting to emerge for
25    the beginning of this morning's proceedings.
```

IBRKGRA1

1           As distressed as I am from Mr. Meringolo having come

2      up to me and shoved me in the chest, I am vastly more disturbed

3      by what he appears to have thought was appropriate contact with

4      Mr. Rechnitz, who we have discussed at length, both at sidebar

5      and in open court, being vulnerable to harassment, and the

6      Court has taken measures to prevent against that.  That's what

7      I've got for you, Judge.

8           THE COURT:  Thank you.

9           Mr. Meringolo.

10          MR. BELL:  I will note, Judge, that once -- I think

11     our heads are still collectively spinning here, and we are not

12     entirely sure what to make of this.  Ms. Lonergan and I have

13     been here for eight years, Ms. Ravener for a number of years as

14     well, we've never seen anything like this.  It's our intention

15     to either move for sanctions or move to hold Mr. Meringolo in

16     contempt for both parts of what happened this morning.

17          I've never seen anything like this.

18          THE COURT:  Thank you.

19          Any comments, Mr. Meringolo?

20          MR. MERINGOLO:  I want to know when this happened with

21     Mr. Rechnitz, where are these agents.  Pull the videotape from

22     here.  Did it happen this morning?  Did it happen last night?

23     If it happened last night, and the agents knew, why didn't they

24     inform the Court via email?  It never happened.  I've been with

25     my father every day that I leave that he's here.  It didn't

IBRKGRA1

1   happen with Rechnitz.  It did not happen.  He came out and

2   threatened me.  You're not allowed to come out running the

3   Court, run in the hallway, and move towards me, and threaten

4   me, and threaten my life.  You're not allowed to do that.  You

5   can't do that.

6            MR. BELL:  For the record --

7            MR. MERINGOLO:  And we have witnesses, too.

8            MR. BELL:  For the record, Judge, I didn't threaten

9   anybody.

10            THE COURT:  Thank you.

11            Just to be clear, Mr. Meringolo, Mr. Bell has stated

12   that you approached Mr. Rechnitz and said, in essence, you are

13   a disgrace.  Do you --

14            MR. MERINGOLO:  That never happened.  That never

15   happened.

16            Judge, Judge, Mr. Rechnitz has a long history of doing

17   exactly this.  For example -- and I need to put this on the

18   record on cross-examination -- he did this in California,

19   called Mr. Bell, said that he was threatened by an individual.

20   Thank God in that case, there was a videotape.  He called his

21   handler -- I don't know who the FBI was -- said he was

22   threatened from Joel Eichner -- Joel Bress.  Joel Bress.  There

23   was a big investigation, a grand jury, unfounded.  This is what

24   he does.  He's saying that he's seen -- Mr. Bell and him are

25   saying to your Honor that they're seeing rabbis or people with

IBRKGRA1

1     hats in the back mock him.  We have a videotape.  Let's get

2     that.  It doesn't happen, Judge.

3              If they wanted to do this to unhinge me, Mr. Bell

4     should have waited to go before your Honor instead of running

5     out of the courtroom, pointing in my face, threatening my life

6     in front of people.  You can't do that to people, Judge.  They

7     want sanctions on me.  I want sanctions on them.  When did they

8     find this out?  Why didn't they go to the Judge last night?

9     Why didn't you call me?  Where did this happen?

10             THE COURT:  Thank you.

11             MR. BELL:  It may be that Mr. Meringolo didn't listen

12    to my account.  I want to be clear as to when this happened.

13    This happened this morning, as Mr. Rechnitz was being brought

14    from the elevator area to that room in the back.

15             MR. MERINGOLO:  Well, then, we have a videotape, and

16    it never, ever, ever, ever happened.

17             MR. BELL:  And to be clear, Judge, Mr. Meringolo is

18    out of his depths, I think, when speaking about the prior

19    incident with Mr. Bress.

20             THE COURT:  That's fine.  I don't think we need to get

21    into that.

22             MR. BELL:  I don't think we need to dive into that,

23    but as to this incident, which is the one that matters, this is

24    something that the FBI agents heard, that Allen Levine saw,

25    that Jona Rechnitz saw.  I do not believe that there is, at

IBRKGRA1

1    least last I checked, audio on the surveillance footage out

2    there, but I do believe that based on where I hear this

3    happened, that it's very possible that Mr. Meringolo's having

4    spoken to Mr. Rechnitz might have been picked up on camera.  It

5    seems a decidedly bad move on his part, but whatever.  I'm

6    noting this on the record now.

7             MR. MERINGOLO:  Judge, I'm not starting this trial

8    until we see that videotape with Mr. Rechnitz because this

9    didn't happen.  It did not happen.  I'm not starting this

10   trial.  I will not defend my client with Mr. Bell, and

11   Mr. Levine, and all these people making these allegations

12   against me.  They're saying I committed crimes, and I want the

13   videotape.  I want your Honor to see the videotape because this

14   is what's been going on in this case since day one.  It's

15   Mr. Bell manipulating testimony, manipulating this.

16             Look at the tape, because I was with my father, I was

17   in here with your clerk, and I was by the window over there.

18   Where is the guy?  Where is the tape?  I went to the bathroom

19   once.  Where is this tape?  If it was on this floor this

20   morning, show me, because it didn't happen.  It didn't happen.

21   I will not start this trial with criminal allegations against

22   me when they're saying this.  And then, your Honor, if it

23   didn't happen, I want you, your Honor -- I would request you --

24   to order a criminal investigation based on this because it did

25   not happen.  It did not happen.

IBRKGRA1

1          THE COURT:  Thank you.

2          MS. NECHELES:  Your Honor, can I be heard?

3          THE COURT:  Yes, please, Ms. Necheles.

4          MS. NECHELES:  I'm concerned now, because as I've

5     heard the prosecutors, as stated by Mr. Bell, they basically

6     just threatened criminal charges against Mr. Meringolo.  They

7     said that they were going to seek to hold him in contempt,

8     bring criminal charges.  And that's extremely problematic.

9          I am now representing Mr. Meringolo and would ask that

10    he sit down and stop going on about this.

11         THE COURT:  Thank you.

12         MS. NECHELES:  But I did, your Honor, see that there

13    was -- I saw Mr. Bell come charging out, very angry.  I think

14    everybody was angry and heated, and that it escalated.

15         THE COURT:  Thank you.

16         MS. NECHELES:  But I think that there was -- we all

17    saw Mr. Bell charging out of here very angry.  He may not have

18    thought he was threatening, but I think it did seem threatening

19    to others.

20         I don't think that this was an intentional sort of

21    con -- we all know Mr. Meringolo by now.  He is someone who

22    gets passionate about things, and so does Mr. Bell.  And they

23    both got very passionate this morning and exploded.  I would

24    ask that maybe we have a little time for people to calm down

25    now.  I think the whole situation --

IBRKGRA1

1          THE COURT:  Let me -- just give me one moment.  I

2     appreciate those comments.  It is at peace with my thoughts,

3     and I think your comments are very helpful.

4          I do think the parties do need some time to step back

5     from the heat of this immediate incident.  I can't resolve what

6     happened at this point from the bench.  I've heard all of you

7     tell me things, and I have worked with you all over the course

8     of this trial, and I have great respect for each of you.  I'm

9     not going to be in a position to decide here which version of

10    events is accurate.

11         I am concerned about whether Mr. Meringolo is in a

12    position now to work on the trial of this case with this issue,

13    having seen how heated the conversations have been about this

14    issue.  I am concerned, frankly, for Mr. Meringolo's health,

15    but I also want to make sure that Mr. Grant's representation is

16    not affected by this incident in any way; i.e., I want to make

17    sure that Mr. Meringolo and the team for Mr. Grant is ready to

18    proceed.  Mr. Meringolo has just stated that he's not ready to

19    proceed.  That may be a thing of this moment.

20         MR. MERINGOLO:  I apologize, Judge.

21         THE COURT:  That's fine.

22         MR. MERINGOLO:  But I want -- I need to see this

23    videotape -- both tapes, because this is an outrageous

24    allegation secondhand, number one, especially tampering with a

25    witness -- not tampering with a witness, saying he's a

IBRKGRA1

```
 1   disgrace.  It's just -- the video will show me in this
 2   courtroom and by the window.  So where -- and Mr. Bell came out
 3   while I was by the window with everybody, and I was talking to
 4   Ms. Necheles in front of the door.  Where did this happen?
 5   Where did this happen, Judge?
 6            THE COURT:  Thank you.
 7            MR. BELL:  Judge --
 8            MR. MERINGOLO:  And, Judge, I can't go on right now.
 9   You can't make criminal allegations against me, you can't come
10   out there threatening my life like you're a big shot and think
11   I'm not going to -- I'm going to take the threats
12   wholeheartedly.  I'm just not going to have it.
13            THE COURT:  Thank you.
14            Can I ask just a very practical question?  I think
15   that we need some time to work through this issue.  My question
16   is:  Is that a question of hours, or should I ask the jury to
17   go home for the day?
18            MR. BELL:  Here's what I think, Judge, and I may be
19   able to shorten things significantly.  As we typically do in
20   cases of the unforeseen and the rare, we had a brief exchange,
21   in part over email with the wiser minds in our appellate unit.
22   Having had that discussion, I think it's safe to say the
23   following:  We do not intend to seek contempt or sanctions
24   against Mr. Meringolo at this time.  We think that -- one
25   moment, please?
```

IBRKGRA1

1          (Pause)

2          MS. NECHELES:  I think --

3          THE COURT:  I'm sorry.  Mr. Bell, you can continue,

4     and then I'll hear from Ms. Necheles.

5          MR. BELL:  I think that we will reserve whatever

6     options there are, but it's not something that we intend to act

7     upon imminently.  We think it's best for everybody to be able

8     to focus on the immediate task of conducting this trial and

9     getting through this witness' testimony.

10          THE COURT:  Thank you.

11          MR. BELL:  Given that, what my suggestion would be is

12     that everybody take about 15, 20 minutes to just take a deep

13     breath.  As somebody who was actually shoved in the chest out

14     there, I think that's all I'll need, and I will be ready to go.

15          What I'd like to do is to be able to calm down

16     Mr. Rechnitz, who I think, although he's had a number of

17     circuitous twists through this ordeal, probably did not expect

18     exactly that to happen, and I want to make sure that he's ready

19     to proceed, but I don't think that's going to take terribly

20     long either.

21          THE COURT:  Thank you.

22          MR. BELL:  So I don't think there's a need to send the

23     jury home or delay things for any length.

24          There are one or two other issues we'd like to take up

25     before beginning this morning.

IBRKGRA1

1          THE COURT:  Thank you.

2          Counsel?

3          MS. NECHELES:  Your Honor, I think we need the day.  I

4     would like to be able to talk with the U.S. Attorney's Office

5     about it.  I think it is very difficult to put a lawyer in the

6     position where what I heard is we're not going to bring charges

7     now, but it's putting Mr. Grant in a very unfair position, and

8     I'd like to see if we can have discussions -- maybe we can view

9     the tapes, and we can have discussions with the office and

10    maybe see what way to proceed.

11         THE COURT:  Thank you.

12         Counsel for Mr. Grant, what would you like to add?

13         MR. MERINGOLO:  Judge, at this point, I'm irate and

14    wouldn't be effective right now.

15         THE COURT:  Thank you.

16         MR. MERINGOLO:  But we need to see these tapes.  We

17    really need to see the tapes.

18         THE COURT:  Understood.

19         So, counsel, with apologies, I'm going to excuse the

20    jury for the day.  I don't believe that -- while I understand

21    the government may not be pleased about this, but I don't think

22    that the defense can proceed here.  This is --

23         MR. BELL:  Judge.

24         THE COURT:  Please go ahead.

25         MR. BELL:  Respectfully, Judge, this is a problem of

IBRKGRA1

1    the defense's making that now winds up being in a position

2    where Mr. Rechnitz, who does not live in this half of the

3    country, is vastly more likely now to have to continue his

4    testimony into next week.  This is happening because

5    Mr. Meringolo saw fit to have utterly inappropriate contact

6    with him.

7            There is an injustice here.  Ms. Necheles talks about

8    taking time to speak to the U.S. Attorney's Office.  There's

9    nothing to talk about.  We're not going to do anything with

10   respect to Mr. Meringolo at any point soon.  They talk about

11   criminal charges, they talk about criminal allegations.  We're

12   talking about something that happens under ordinary

13   circumstances where people note that an attorney has conducted

14   himself in a fashion that's inappropriate, but that's a side --

15   that's an utterly collateral issue.

16           Your Honor, this trial has dragged on long enough, and

17   we would ask, both for the sake of the jury's time, for the

18   sake of the witness' time, if it's a matter of taking a longer

19   amount of time this morning to resolve things and for everybody

20   to calm down, then that's fine, but I don't think that

21   anybody's provided a real reason why -- or a reason, by the

22   way, that wouldn't continue indefinitely were the matter not

23   resolved to Ms. Necheles' or Mr. Meringolo's situation past

24   today.  I'd ask that you just give us a couple of hours, Judge,

25   but to delay things here would be unfair to the jury, to the

IBRKGRA1

1    witness, and I think, ultimately, to the government as well.

2             THE COURT:  Thank you.

3             I agree that this is extremely unfortunate.  I am very

4    mindful of the amount of time that the trial has taken, and as

5    you can see, I'm trying to be very conscientious of the jury's

6    time, but I also just observed the protestations of counsel,

7    and I don't believe, based on that, that I'm confident that

8    counsel, in particular for Mr. Grant, will be able to focus

9    thoroughly on his client's defense at this moment in time.

10            I'm not basing this decision on the possibility of

11   contempt sanctions or other action by the office against him;

12   I'm just basing it on the fact that people are feeling

13   impassioned and concerned about their own interests, and I

14   appreciate that, Mr. Bell, you've been very calm about this in

15   the face of what you've described as a physical contact, but I

16   don't think that everyone can be expected to approach the

17   situation with equal equanimity.  And first and foremost in my

18   mind is ensuring that each of the defendants has the

19   opportunity to have a fair trial with effective representation,

20   and I'm not persuaded that at this moment, that will happen

21   with this hanging over the heads of counsel present.

22            I also don't think it's necessarily a good use of the

23   jury's time to keep them here for hours, have them listen to

24   two hours of testimony, and then to send them home.  I think

25   it's more respectful of their time to give them the day off and

IBRKGRA1

1    let them go about their business.  It's a freighted and

2    unfortunate resolution for what is clearly a freighted and

3    unfortunate situation, one that, in any event, should not have

4    occurred.  So I'm going to ask Mr. Daniels to allow the jury to

5    leave.  We will ask that the recordings, to the extent that

6    there are any, of videotape be secured.

7            I would like to make sure that when we start up again,

8    I expect the first thing tomorrow morning, that we are able to

9    begin promptly with our jury, and so I will ask the parties if

10   you think that we can come back later this afternoon to talk

11   about whatever issues are otherwise on the government's plate

12   and to talk about the limiting instruction that I wanted to go

13   to the parties, but I don't want to do that now.  I'd like to

14   give the parties an opportunity to take a deep breath, and walk

15   around the block, and then talk to me about what you want to

16   do.  I would like to convene again to do some administrative

17   work, but you'll just write me or call my chambers and let me

18   know what you want to do.  I'm free until 3:00.

19           So, counsel, please reach out to me and let me know if

20   you're ready and able to get back today, but I think it's very

21   important for us to take a break.

22           MS. NECHELES:  Your Honor, can we just try to schedule

23   something right now for 1:00 or 2:00, whichever is convenient

24   to the Court, how much time you think it would be, and then if

25   there's a problem, we'll let you know?

IBRKGRA1

1           THE COURT:  I'd be happy to do that.

2           Counsel?

3           MS. NECHELES:  1:00 o'clock, does that work, your

4      Honor?  Can the clients be excused, or would your Honor want

5      them here?

6           THE COURT:  I am flexible.  I don't know what the

7      nature is of the issues that the United States wants to bring

8      up.  The issue that I want to discuss -- or the issues that I

9      want to discuss are:  First, certain evidentiary issues with

10     respect to the defense exhibits; and, second, a proposed

11     limiting instruction based on Mr. Rechnitz's testimony, which

12     is basically a reiteration of the limiting instruction that we

13     provided at the beginning of his testimony with a version of my

14     intended limiting instruction with respect to the effect of

15     accomplice guilty pleas in the case.

16          MS. NECHELES:  Thank you.

17          THE COURT:  I'll see you all back here at 1:00.

18          MS. NECHELES:  Yes.  And I would ask that my client be

19     excused.

20          THE COURT:  Thank you.

21          MS. NECHELES:  Mr. Grant, also?

22          MR. MERINGOLO:  If Mr. Grant could be excused, also.

23          THE COURT:  Thank you.

24          MR. MERINGOLO:  Judge, when can we get these tapes,

25     especially with Mr. Rechnitz?  It's very important because it

IBRKGRA1

1    didn't happen, and I think it's -- it should be part of him

2    making stories up on cross.  I mean, it just did not happen.

3              THE COURT:  Thank you.

4              I'll ask Mr. Daniels to work with the court security

5    and the marshals to see what we can do to at least identify and

6    hold those tapes.  Whether the parties will be able to disclose

7    them is unclear.  I will take up any requests to show those to

8    the jury, but that would give us real concerns on my part.

9              So I'll see you back here at 1:00.

10             MS. NECHELES:  Thank you, your Honor.

11             (Recess)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IBRTGRA2

1      THE COURT:  So counsel, welcome back.  Thank you very

2  much for being here.

3      MS. NECHELES:  Your Honor, I have Mr. Stern from my

4  office sitting with me.  Is that all right with your Honor?

5      THE COURT:  That's fine.

6      MS. NECHELES:  Thank you.

7      THE COURT:  So I would like to take up a number of

8  matters.  I think that the first issue I would like to address

9  are the consequences of this morning's events.

10      Just a couple of short comments.  I have been informed

11  that the marshals have secured the video from outside of

12  courtroom.  I understand that it would be provided to the

13  United States Attorney's Office.  I have not watched it, and I

14  would recommend that, to the extent that the party,

15  particularly counsel for Mr. Grant, is interested in obtaining

16  it, that's a conversation that I would recommend be taken up

17  with the Department of Justice.

18      I would like to talk about the consequences of this

19  morning's issues, and in particular I'm concerned about the

20  conduct that was described to me may give rise to a conflict of

21  interest for Mr. Meringolo that will require, at a minimum,

22  conduct of a Curcio hearing.

23      Now let me emphasize I'm not taking a position at this

24  time regarding what happened outside my presence.  I'm focusing

25  on the United States' comments about Mr. Meringolo's conduct

IBRTGRA2

1    and not Mr. Meringolo's comments about counsel for the United

2    States largely because I don't understand that I'm under an

3    obligation to conduct the kind of conflict inquiry with respect

4    to the counsel for the United States that I am with respect to

5    defendants.  If the parties think that is an incorrect

6    understanding, you should let me know.

7            Counsel?

8            MS. LONERGAN:  Your Honor, I'm sorry to interrupt.

9            THE COURT:  That's fine.

10           MS. LONERGAN:  We have been conferring with defense

11   counsel in order to hopefully move forward.  I believe that we

12   are close to reaching some sort of proposal for the Court, but

13   I think that defense counsel has asked to consult with one of

14   their clients, and that that should be able to take place in

15   approximately the next ten minutes.

16           THE COURT:  Sorry, can you explain what it is you're

17   referring to?

18           MS. LONERGAN:  Your Honor, yes.  I think that we may

19   have an agreed-upon proposal between the parties to present to

20   the Court, but that defense counsel, before agreeing to that

21   proposal, would like to consult.  Specifically, Mr. Meringolo

22   would like to consult with Mr. Grant before we make that

23   proposal to the Court.

24           THE COURT:  Thank you.  Would this resolve the

25   possibility of any kind of conflict that must be the subject of

IBRTGRA2

1     the Court's inquiry?

2          MS. LONERGAN:  It may, your Honor.

3          THE COURT:  Let me be clear, the circuit puts me under

4     an obligation to inquire regarding potential conflicts.

5     Earlier the United States this morning said that it might seek

6     contempt or other sanctions against Mr. Meringolo for his

7     conduct.  While I heard the other comments made by the United

8     States that they do not expect to foresee such action at this

9     time, that's different from saying they will never do so or

10    that they're granting Mr. Meringolo immunity for any potential

11    criminal conduct.

12         I'm concerned about that comment, and I'm also

13    concerned because what the United States described to me might

14    be considered to be criminal conduct, namely threatening a

15    witness, physical assault here in federal property, and threats

16    of violence to a federal prosecutor in the conduct of his

17    business.  Those acts, if true, may be the basis for a

18    potential criminal prosecution, the decision about which

19    presumably would be made by the office of the prosecutors here

20    who are present and who were involved in the underlying

21    incident.

22         So I don't know exactly what the proposal is that the

23    parties might seek to bring to me, but it appears that there is

24    a potential conflict of interest.  And so my agenda, as

25    dictated by the Circuit, is to inquire about the nature of the

IBRTGRA2

1    conflict to determine whether or not it is one that is

2    potential or actual or one that is waivable or not waivable.

3    And if it's waivable, to take appropriate steps in order to

4    protect against potential appellate review regarding a

5    conflict.

6           MS. LONERGAN:  Your Honor, we understand that.  We

7    think the Court's inquiry into all of those matters, however,

8    will be informed by the proposal that we seek to put before the

9    Court.

10          However, we just feel that we don't want to seek to

11   put that proposal before the Court before we have Mr. Grant's

12   essential approval to that proposal.  My understanding from

13   defense counsel is that Mr. Grant is minutes from the

14   courthouse and that it will be a fairly short conversation once

15   he arrives, such that we should be able to take up this matter

16   with additional information that will inform the Court's

17   inquiry in approximately 10 to 15 minutes.  And we think that

18   it makes sense to structure the conversation in that way, given

19   that that additional information will likely influence the way

20   that the Court wishes to proceed this afternoon.

21          THE COURT:  That's fine.  Thank you.  I'm happy to

22   allow counsel more time to confer with his client about this

23   issue.

24          MS. LONERGAN:  Your Honor, just noting for the record,

25   it appears that Mr. Grant has just arrived, so this

IBRTGRA2

1   consultation could likely happen now if the Court would give

2   the parties the time to do that.

3   THE COURT:  Thank you.  I will happily give the

4   parties time to discuss that issue.

5   Sorry, I did not realize that Mr. Grant was not

6   physically present here earlier.  Let me say again what I said

7   earlier, just to make sure that Mr. Grant has also heard these

8   comments.

9   The concern that I articulated earlier was that the

10  issues that arose this morning might give rise to a potential

11  conflict of interest for Mr. Meringolo that would require the

12  conduct of a Curcio hearing.  As I said earlier, the Court

13  isn't taking a position on what happened outside of my presence

14  earlier today, and as I said, I'm not talking about

15  Mr. Meringolo's comments about Mr. Bell's conduct at this time

16  because I don't understand that I'm under a legal obligation to

17  take up an inquiry with respect to those issues.

18  Now the United States said this morning they might

19  seek contempt or other sanctions against Mr. Meringolo for his

20  conduct.  They changed their position saying they do not expect

21  to do so now.  During the course of our conversation they did

22  not say that they would never do so.  I should be clear, I'm

23  not requesting or requiring that the government or anyone else

24  agree to take or not take any particular course of conduct in

25  order to address this issue.

IBRTGRA2

1           I said that I'm concerned also because the United

2      States has described what might be considered to be criminal

3      conduct, namely threatening a witness, physical assault here in

4      federal property, and threats of violence to a federal

5      prosecutor in the conduct of his business.  Those acts, if

6      true, might be the basis for a criminal prosecution, one about

7      which the decision would be made by presumably the office of

8      the prosecutors who are here present.

9           So the law in this Circuit requires that where the

10     Court is alerted to a potential conflict of interest, I must

11     inquire about it and then take appropriate steps to determine

12     whether or not the conflict is one that is waivable, and if it

13     is one that is waivable, to take appropriate steps in order to

14     ensure that the waiver is knowing, voluntary and intelligent.

15          So I don't know what the solution is that the parties

16     are talking about, but it's also not clear to me how it would

17     be that it would possibly obviate the need for some sort of

18     inquiry regarding the waiver.  I understand that what the

19     nature of the issue is may be informed by the parties'

20     presentation to the Court, which will take place momentarily.

21     That's the substance of what I described earlier.

22          So I'm happy to step down now.  Counsel, please let

23     Mr. Daniels know when you're ready to start again.

24          Let me say this as well, to the extent that a Curcio

25     hearing must take place, the parties may wish to consult on

IBRTGRA2

1    whether or not we can get that done today.  And the more time

2    that is taken up in consultations and the like before we begin

3    working on that process, the less likely it is that we'll be

4    able to take that up today and more likely it is that it will

5    eat up our trial time tomorrow.  So I look forward to hearing

6    from you.

7              Anything else that I should take up before we step

8    down?

9              MS. LONERGAN:  No, your Honor.  Understood.  And we'll

10   send a message to Mr. Daniels as soon as possible.

11             THE COURT:  Counsel for Mr. Reichberg, anything else?

12             MS. NECHELES:  No, your Honor, thank you.

13             MR. MERINGOLO:  No, Judge.

14             THE COURT:  Thank you.  See you after the recess.

15             (Recess taken)

16             THE COURT:  So counsel, when I left the United States

17   had told me that the parties were talking about some resolution

18   that might affect in some way what may be a potential conflict

19   of interest.  What information would you like to share?

20             MS. LONERGAN:  Yes, your Honor, thank you for giving

21   us the opportunity to consult.

22             After our consultation we wanted to inform the Court

23   that we have brought this matter to the attention of our

24   supervisors, and there's been consultations up to the U.S.

25   Attorney, and it is our position, the position of the office,

1    that we will not be pursuing this matter in any way at all any

2    further, not later, not now, not at all.

3          And in light of that position, we do not believe that

4    there is any sort of potential conflict because of our position

5    that we are taking this matter essentially, based on

6    representation, off the table.  We will not be pursuing it in

7    any way.

8          THE COURT:  Thank you.  Is there some kind of

9    agreement between the office and Mr. Meringolo that protects

10   him against future changes of position by this or any other

11   prosecutorial office?

12         MS. LONERGAN:  Your Honor, there's no written

13   agreement.  We have consulted with Mr. Meringolo.  We have the

14   chief of the criminal division here.  She has also spoken with

15   Mr. Meringolo and informed him that that was the office's

16   position and that our office will not be pursuing this matter

17   in any way.

18         THE COURT:  Thank you.  By "this office," are you

19   speaking on behalf of the United States Department of Justice

20   as a whole?

21         MS. LONERGAN:  Your Honor, may I have one moment to

22   confer?

23         THE COURT:  Yes, please take your time.  I will be

24   interested in hearing whether you think that this arrangement

25   impacts anything other than the content of the statements that

IBRTGRA2

1    I will ultimately have to make during a Curcio hearing as

2    opposed to whether or not one must take place.

3            (Pause)

4            THE COURT:  Counsel, before you respond to my

5    question, let me ask, for my benefit, what impact the

6    government thinks that this has on the question of whether or

7    not this is a waivable conflict.  In other words, the

8    government has agreed to -- or I should not say the government,

9    the office has made an oral representation to the Court that it

10   will not prosecute Mr. Meringolo for his conduct.  Why does

11   that make a difference?  In other words, if the government was

12   not taking that off the table, why would it change the nature

13   of the question whether or not the conflict is waivable?

14           MS. LONERGAN:  Your Honor, because I think, from our

15   understanding, we don't really understand necessarily what the

16   conflict would be.  A conflict might be, for example, if we had

17   not taken this position that the questions the Court might pose

18   to Mr. Grant would be does the possibility of your attorney --

19   the possibility of some sort action against his attorney.

20           Given that we are representing here, and I will

21   further the representation with respect to the Court's prior

22   question, that there will be no action by our office, that

23   there's, as we just put on the record, an oral agreement not to

24   pursue this in any way or manner by our office.  We cannot bind

25   the Department of Justice as a whole, but this incident

IBRTGRA2

1    happened in the Southern District of New York in a trial

2    proceeding in the Southern District of New York and we are not

3    intending to make any referrals to any body.

4            And I just note for the record, for example, when we

5    enter into a plea agreement with a defendant such as the

6    cooperating witnesses in this case or any defendant, it

7    similarly is a plea agreement with respect to only our office

8    because we cannot bind the entire Department of Justice.  But

9    in light of that position, we think that there is no conflict

10   because we have represented here and in oral agreement with

11   defense counsel that we will not be pursuing any form of action

12   in any way.

13           THE COURT:  Thank you.  And as the parties are aware,

14   the consequences of this conduct are not limited to the

15   prospect of criminal prosecution by the United States but also

16   a potential disciplinary action by the grievance committee of

17   this Court or by appropriate bar organizations.

18           Counsel for the United States, first, again I don't

19   completely appreciate what it is that the government seeks to

20   achieve through this, in other words, whether or not this is

21   better than simply conducting a Curcio hearing with respect to

22   a possible pending prosecution and these other issues.  I

23   understand that the government has taken the position that it

24   has.  I don't know that it takes off the table the need for a

25   Curcio hearing with respect to potential conflict, and so as a

IBRTGRA2

1    result it's not completely apparent to me why it is the

2    government is taking the step that it has.  That is your

3    decision.

4            What's your view regarding the prospect of the

5    potential disciplinary action against Mr. Meringolo as a result

6    of conduct asserted by the United States during the course of

7    today's earlier proceeding and whether or not that could

8    represent a conflict?

9            Counsel, unless you think that this is an unwaivable

10   conflict, the price for dealing with this is the conduct of a

11   Curcio hearing at which we would ensure that Mr. Grant is aware

12   of the consequences of the issue.

13           So I want to understand what the government's position

14   is on whether the government's position is that these are

15   unwaivable conflicts such that a Curcio hearing is neither

16   necessary nor would it be effective.

17           MS. LONERGAN:  One minute, your Honor.

18           (Pause)

19           THE COURT:  Thank you.  The baseline question here

20   ultimately is whether or not the solution that you're proposing

21   to the Court is more efficient or effective than conducting an

22   appropriate Curcio hearing.

23           (Pause)

24           MS. LONERGAN:  Your Honor, thank you again for

25   allowing us the time to consult on this.  I think that there

IBRTGRA2

1     are two pending questions.  Let me try to answer them both.

2                 First, with respect to any disciplinary action, we

3     have the same position, which is that we do not intend to make

4     any referrals.  Again, we can only bind our office, but we are

5     not intending on making any ethical or disciplinary referrals.

6                 On the Court's second point, while our position

7     continues to be we do not believe a Curcio hearing is

8     necessary, however, we do think it is a waivable conflict.  So

9     if the Court wants to proceed with a Curcio hearing, I think

10    that we can do that this afternoon.  We ask the Court's deputy

11    to make a phone call to mag court to have a CJA lawyer sent to

12    the courtroom to consult with Mr. Grant before the Curcio

13    hearing.

14                THE COURT:  Thank you.  And what's the difference in

15    the position with respect to whether or not this is a waivable

16    conflict as a result of the government's agreement not to

17    proceed with the possibility of charges against Mr. Meringolo

18    or not?  How does that decision affect this issue?

19                MS. LONERGAN:  Your Honor, again, we do not believe

20    there's a conflict at this point, but we think that to the

21    extent there is, it's waivable.  We think that that would be

22    the case even if we hadn't made the representation that we did,

23    but, particularly in light of the representation that we have

24    just made to the Court, that this is most certainly a waivable

25    conflict and that it can be addressed through a Curcio hearing

IBRTGRA2

1    to the extent that there is a conflict at all.

2              THE COURT:  Thank you.

3              Let me hear from counsel for Mr. Grant.  Counsel,

4    what's your view?  As you know, my concern is to make sure I

5    understand what the nature and extent of any possible conflict

6    could be and also to ensure that if there is such a conflict,

7    whether or not it's waivable, and if so, what steps we should

8    take.

9              MS. CAPPELLINO:  Your Honor, we concur with the

10   government.  We don't believed there's any conflict.  To the

11   extent there's a potential conflict, we would be happy to have

12   a Curcio hearing, and we would have to waive that.

13             THE COURT:  Thank you.  What's the nature of the

14   potential conflict?  I ask in part so that the appropriate

15   questions can be framed here.

16             And counsel, you understand the consequences, counsel

17   for the United States in particular, and if all possible

18   grounds aren't covered, or I should say if I do not do a

19   thorough job capturing all possible conflicts and Mr. Grant is

20   not adequately informed, the case could be brought back to try

21   the case again.  So I hope the parties will help me to frame

22   the questioning in a Curcio appropriately, given those

23   possibilities.

24             Ms. Cappellino, what would you say in response to my

25   questions about the absence of a written agreement immunizing

IBRTGRA2

1    Mr. Meringolo from any potential prosecution by the federal

2    government with respect to this issue, and also the possibility

3    of disciplinary proceedings either by the grievance committee

4    of this Court or bar associations or other similar

5    organizations?

6              MS. CAPPELLINO:  Your Honor, we don't see a potential

7    conflict of interest arising here.  We are assured by the

8    government's verbal proffers before the Court, so we do believe

9    that takes away any sort of potential for conflict.

10             So as far as crafting questions, we would defer to

11   your Honor to the extent necessary.  We don't believe a

12   conflict exists or can exist under the circumstances presented

13   today by the government.

14             THE COURT:  Thank you.

15             Counsel for Mr. Reichberg?

16             MS. NECHELES:  Thank you, your Honor.

17             Your Honor, thank you for giving us the time to try to

18   calm things down.  I think it was extremely helpful and I think

19   everybody sort of took a step back and realized we have all

20   worked very hard on this trial and that we all want it to go

21   forward, that people's tempers were up, and that was needed to

22   take a step back.

23             And I think that the office has really come forward

24   and reassured us that the situation that I was concerned about

25   before earlier today was not -- I understand their statements

IBRTGRA2

1  here to be binding agreement, assured me it is a binding

2  agreement, that they are putting it on the record.  It's not a

3  written agreement, but it is an oral agreement that they will

4  not be bringing any charges and they will not be making any

5  referrals, any ethical referrals here.  And so I believe, with

6  that in mind, that we could all go forward on this.

7          I'm a little concerned, your Honor -- and I don't

8  believe that there is a conflict.  I'm a little concerned about

9  your Honor's concern about this in terms of like whether your

10  Honor is feeling that your Honor has an obligation to do

11  something here.  I am hopeful that we're all sort of feeling

12  like we could just walk forward and try to all calm ourselves

13  down a little bit.  It's been a hard-fought trial and tempers

14  have been up, and I think we all realize, given what happened

15  today, that we all need to be politer and act in a way that

16  doesn't inflame each other.  And I think we will all try to do

17  that.

18          And I think that, yes, we all sort of need to be able

19  to go forward, we all need an assurance that all the parties

20  here are feeling like let's move forward and put this behind

21  us.  None of us are interested in going forward with any

22  prosecution or referral to an ethical organization.  I feel

23  assured of that with the U.S. Attorney's Office.  They have

24  taken the extraordinary step of having people very high up in

25  the office be here today and reaching out to us, and they put

IBRTGRA2

1    it on the record, what I understand to be an agreement, a

2    binding agreement.  So I don't think -- I think that that

3    resolves the issue, the conflict issue.

4         The only other conflict issue, which we discussed

5    among ourselves and come to an agreement on, is we do not want

6    to cross on any of this.  I will not be crossing on threats

7    made to witness, and Mr. Meringolo will not be cross-examining

8    on threats made to the witness.  We discussed this with

9    Mr. Grant.  He is comfortable with this.

10        And the reason we're doing this is we just think it's

11   a bad idea.  We think it's a dangerous place to cross and we

12   have made a strategic decision as defense counsel not to do

13   that.  The government did not condition their agreement on us

14   saying that.  We have said that to the government, that we do

15   not intend to cross on this.  Notwithstanding Mr. Meringolo's

16   statements this morning, it's just a poor idea.  I have had

17   poor ideas, as your Honor pointed out earlier in the case,

18   also, and we could all do -- it's a stepping back from it.  It

19   would be a poor idea for the defense to cross on this, and we

20   have no intention of getting into this area.

21        And I think that that takes the other sort of area,

22   the issue of what could be a potential conflict, off the table.

23   There won't be an issue where any of us will be putting

24   ourselves into the trial in terms of a cross-examination.

25             THE COURT:  Thank you.  Counsel for the United States,

1    to be clear, what I understand to be the government's agreement

2    is that under no circumstances will the United States,

3    represented by the office of the Southern District of New York,

4    take any action against Mr. Meringolo with respect to the

5    conduct described here.

6              Are there any contingencies or requirements associated

7    with that or any circumstances in which the United States might

8    retreat from that position?

9              MS. LONERGAN:  One moment, your Honor.

10             (Pause)

11             MS. LONERGAN:  Your Honor, there are no circumstances,

12   there are no contingencies.

13             THE COURT:  Thank you.  Are there any circumstances in

14   which the facts underlying this incident might influence or

15   affect the way that the United States approaches cases brought

16   by Mr. Meringolo in the future?

17             MS. LONERGAN:  No, your Honor.  No, your Honor.  This

18   is -- I think Ms. Necheles put it very, very well today, which

19   is that this has been an extremely hard-fought trial.  It has

20   been emotional at times.  And I think there was, as the Court

21   said earlier, an unfortunate incident that happened earlier

22   today, but what we are all trying to do, your Honor, is to move

23   forward from this point to conduct the rest of this trial

24   professionally and to really do what we are all set here to do,

25   which is to give these two defendants their day in court and

IBRTGRA2

1   present the case to the jury to allow the jury to make a

2   decision.

3              (Continued on next page)

IBRKGRA3

```
 1                THE COURT:  Good.  Thank you.  And the agreement
 2     applies both to the alleged -- I should say what was described
 3     by counsel for the United States as a direct threat to the
 4     witness; is that right?
 5                MS. LONERGAN:  That's correct, your Honor.
 6                THE COURT:  And it also applies to what Mr. Bell
 7     described as a physical assault on him?
 8                MS. LONERGAN:  That's correct, your Honor.
 9                THE COURT:  Thank you.
10                Has Mr. Bell disclaimed any prospect of bringing civil
11     action against Mr. Meringolo as a result of that assault?
12                MS. LONERGAN:  One moment?
13                (Pause)
14                MS. LONERGAN:  Your Honor, just to clarify one thing:
15     I think we didn't characterize the statement to the witness as
16     a threat; we characterized it just as a remark, to make the
17     record clear.
18                But, secondly, and I think more importantly, as to the
19     Court's second question, Mr. Bell is disclaiming any personal
20     right of action that he would have against Mr. Meringolo, to
21     the extent that he would have any.
22                THE COURT:  Thank you.
23                Mr. Bell, is that correct?
24                MR. BELL:  It is, your Honor.  One moment, please?
25                (Pause)
```

IBRKGRA3

1      MR. BELL:  That is, your Honor.  That's the case.

2      THE COURT:  Good.

3      MS. NECHELES:  Your Honor.

4      (Pause)

5      MR. MERINGOLO:  Your Honor, me personally would

6  disclaim any anything against Mr. Bell or anybody from the

7  government.  I would disclaim anything, any potential action or

8  any cause of action, that I may or may not have -- I don't

9  know, but if I did, I would disclaim it.

10      THE COURT:  Thank you.  Good.  I appreciate that.

11      First, let me say, I appreciate that the parties have

12  worked together to diffuse the situation.  I understand that

13  counsel for the United States has undertaken not to pursue any

14  potential criminal action against Mr. Meringolo as a result of

15  this conduct, and that the office will not take this alleged

16  assault on a prosecutor into account going forward in cases in

17  which he's representing defendants against the office, and I

18  will accept that proffer as a true one.

19      As I understand it, counsel for the United States does

20  not understand that this agreement is one that makes a

21  difference in terms of whether or not the conflict, if any, is

22  waivable; in other words, they believe that they could have

23  gone through a Curcio proceeding, had me explain the nature of

24  the potential prosecution to Mr. Grant, and had him waive any

25  potential conflict.  So since I understand that that is the

Case 1:16-cr-00468-GHW  Document 524  Filed 01/09/19  Page 40 of 77    2762

IBRKGRA3

position of the government, I understand that they have done

this out of what I'll describe as the goodness of their heart,

in order to help to calm the waters in this case, which is a

laudable step.  I think that the waters needed to be calmed

here, and I thank you for that.

I still need to think about whether or not, given what

I understand to be the circumstances here, a Curcio hearing

would nonetheless be appropriate.  I think all the lawyers here

know that the circuit asks me to take up waivers in

circumstances where there may be a possible conflict, on the

theory that it's easier for me to do it now than for them to

get the case on appellate review and send it back for a second

trial.  So I'd like to consider the issues that you brought to

my attention, but, given the general guidance by the circuit

with respect to such potential conflicts, I think that the more

prudent path would be to conduct a Curcio hearing.  I

understand that the nature of any potential conflicts as a

result is relatively constrained, and that the parties believe

uniformly that any potential conflict is waivable.

What I'd like to do, as a consequence, is to ask the

parties to help me, particularly the government, who will be

taking up the mantle of trying this case again in the event

that the colloquy is inadequate, to ensure that the questions

that I may ask Mr. Grant during the course of the hearing would

capture any potential conflicts, understanding that, at this

IBRKGRA3

1    point, taking the government's commitment and Mr. Bell's

2    personal commitment, that those prospects may be remote.

3            I expect to address both the prospect of, I'll call

4    it, some portion of the government not pursuing -- complying

5    with the office's agreement, which I am going to accept as

6    fully binding and completely unconditional, based on the

7    representations of the counsel who are here, and also to

8    address the prospect for any disciplinary action either here,

9    in the court, or with any bar organization.

10           I think it would be advantageous for us to undertake

11   that project today so that we can proceed to our trial day

12   tomorrow and to work effectively together to get as much

13   advantage out of the trial day tomorrow as we can, given our

14   lost day today.

15           So my proposal is that we take some time for me to

16   propose some questions for potential Curcio inquiry of

17   Mr. Grant, given what we've learned, the information that I've

18   been provided, which is very helpful, and I expect to describe

19   it.  And I'd also ask for the parties to propose any potential

20   questions for the Court to ask, again, with the hope that the

21   inquiry will be sufficiently fulsome to protect the record and

22   to ensure that Mr. Grant is fully aware of any possible

23   consequences of this issue.  So I'd like to do that.  I'd like

24   to do that relatively promptly.  It will take me some time to

25   formulate questions, and I'd like to ask the parties to help me

IBRKGRA3

1      do that, and I'd like to do it today.

2              I have already reached out to the CJA office, and I

3      understand that CJA counsel is available to do this at some

4      point later today.

5              My proposal then would be for us to take a break to

6      ask the parties to propose potential substantive questions for

7      the Curcio hearing, and for me to prepare a series of questions

8      in connection with that, that we can undertake later today.

9              MS. LONERGAN:  Your Honor, may I inquire the name of

10     the CJA counsel?  I ask that only because there have been many

11     lawyers for, for example, witnesses in this case, and we just

12     want to confirm that there's no conflict.

13             THE COURT:  Thank you.  I understand.  It's

14     Mr. Pittell, P-i-t-t-e-l-l.

15             MS. LONERGAN:  That should be fine, your Honor.  Thank

16     you.

17             THE COURT:  Good.  Thank you.

18             I'd like to do this, and my goal would be to try to be

19     in a position to proceed this afternoon, perhaps around 3:00.

20     It's about 2:10 now.  I think that in this window of time I can

21     prepare a script, and I'd ask that the parties propose any

22     potential substantive questions that you'd like for me to

23     inquire about in connection with the issues.  Then we can come

24     back around 3:00 and hopefully conduct the hearing, if that

25     will provide adequate time for Mr. Grant.

IBRKGRA3

1          Counsel for Mr. Grant, what's your view on this

2     proposed approach?

3          MR. MERINGOLO:  This is fine, Judge.

4          THE COURT:  Fine.  Thank you.

5          I expect that I will give Mr. Grant further

6     opportunity to confer with CJA counsel about these issues

7     before he makes a final decision about waiving any potential

8     issues, to the extent there are any, given the government's and

9     Mr. Bell's generosity with respect to the underlying incident.

10          So my proposal then would be to take a short recess,

11    to ask the parties to help me frame these questions, and for me

12    to frame the questions, and then to come back around 3:00 and

13    to try to finish addressing this set of issues.

14          I know the government had some issues that you wanted

15    to bring to my attention as well this morning.  Would you like

16    to float those now so that I'm aware of them?  Yes,

17    Ms. Lonergan.

18          MS. LONERGAN:  Your Honor, I think it was primarily

19    about defense exhibits, which I know was also on the Court's

20    agenda for this afternoon.  It would be the government's

21    position that we should address this matter first because we

22    think that that other matter can wait, and if we could take

23    this up first and make sure we can try to get some closure on

24    it today, I know we had prior briefing on defense exhibits.  We

25    also received very early this morning, or late last night, a

IBRKGRA3

1    large number of additional defense exhibits, which we have not

2    yet had time to review all of them.  So we were merely going to

3    put that on the record this morning, that we hadn't yet had

4    time to review all of them, and that we would potentially be

5    making objections, essentially on the fly, as those issues came

6    up.

7                 THE COURT:  Thank you.

8                 MS. LONERGAN:  We have had a little bit more time to

9    review them.  We still I don't think necessarily will file a

10   brief, but, again, it's not necessary for us to do that today

11   if it will take time away from resolving what we think is this

12   more central issue.

13                THE COURT:  Thank you.  I appreciate that.

14                Let's take a short recess.  Counsel for the United

15   States, again, I appreciate your views and those of counsel for

16   each of the defendants with respect to substantive questions

17   that I might ask, and/or your proposed description of what any

18   potential conflict may be.  I understand that it is a vanishing

19   potential conflict, given the parties' agreements, but I think

20   it's better to cauterize this potential issue than proceed

21   without substantively addressing it through a Curcio, given

22   that we can do so relatively efficiently.

23                Counsel, if you can, please email to Mr. Daniels and

24   my chambers' email box whatever your views are.  Please share

25   them with your adversary, so copy them on the email with your

IBRKGRA3

1    proposals.  I will put something together, and I will tell you

2    what I expect to cover.

3           Counsel for Mr. Grant, I expect that you will let

4    Mr. Grant know what a Curcio hearing is, and the kind of

5    questions that he can anticipate there.  Basically, Mr. Grant,

6    what I'll be doing is describing the nature of the possible

7    issues that may come up as a result of this, I'll be describing

8    to you what the nature is of your right to conflict-free

9    counsel, I will describe some hypothetical scenarios in which

10   this might give rise to conflicts, and, as you will hear, I

11   will ultimately be asking you to say back to me, in your words,

12   what it is that you understand the potential conflict to be so

13   that I can understand that you fully understand them as you are

14   making a decision about whether or not to waive these rights.

15          You will have independent counsel who I will obtain

16   for you, paid for by the CJA, the Criminal Justice Act, and

17   that person will be a resource to you in the event that you

18   want independent counsel in this issue.

19          I should say that while I have some hope that we will

20   be able do this efficiently today, there is absolutely no rush.

21   This is not an issue that needs to be resolved today.  It's

22   important, first and foremost, that Mr. Grant be comfortable

23   with any decision that he needs to make, and that he understand

24   fully the nature of the inquiry.  If that requires more time

25   than is allotted today, that's not a problem, and we will take

IBRKGRA3

1      that time.

2                  MS. NECHELES:  Your Honor, can I be excused?  This is

3      the conflict which I don't think is my issue at all.

4                  THE COURT:  Thank you.

5                  Counsel for the United States, any concerns?

6                  MS. LONERGAN:  Your Honor, we have no objection, as

7      long as the Court is not intending to take up any other matters

8      today.

9                  THE COURT:  That's fine.  I will excuse Ms. Necheles

10     and Mr. Reichberg, and I will eschew taking up any other

11     matters.  I will ask my deputy to pass to the proposed limiting

12     instruction that I mentioned earlier so that you can have it at

13     hand and review it, be prepared to discuss it in the morning.

14                 MS. NECHELES:  Thank you, your Honor.

15                 THE COURT:  I'll see you all back here around 3:00.

16     Thank you.

17                 (Recess)

18                 THE COURT:  Thank you very much, counsel.  Welcome

19     back.

20                 First, counsel, thank you very much for your proposed

21     questions.  I will try to work them in as I proceed.  Please

22     let me know if there are any additional questions that you'd

23     like for me to ask at any point during today's proceeding.

24     I'll give you the opportunity to do so, but please don't

25     hesitate to let me know if there's anything that you would like

IBRKGRA3

1   for me to raise.

2          First, let me confirm that Mr. Pittell is here,

3   counsel?

4          MR. PITTELL:  Yes, I am.  Good afternoon, your Honor.

5          THE COURT:  Thank you very much.

6          I have asked Mr. Pittell to be here.  He is the

7   Criminal Justice Act attorney on duty for today.  I've asked

8   him to be here to provide Mr. Grant with independent legal

9   advice with respect to this issue.  As I said earlier, I will

10  provide you, Mr. Grant, with an opportunity to confer with

11  Mr. Pittell, and I will give you as much time as you like in

12  order to consider the issues that are raised here.  Let me

13  begin.

14         We are here today to conduct a hearing pursuant to

15  United States versus Curcio, which is 680 F.2d 881 (2d Cir.

16  1982).  Mr. Grant has been indicted in a multicount indictment

17  for a number of offenses, about which we are all well aware

18  because we're in the midst of trial with respect to them.

19  Mr. Grant is represented, and has been represented throughout

20  this case, by Mr. Meringolo, and he is joined by Ms. Cappellino

21  of his office.

22         Mr. Grant, as you know, we are here conducting this

23  hearing as a result of the conduct that was described to me

24  this morning by counsel for the United States, by your counsel.

25  You were here.  You heard the nature of those allegations.  As

IBRKGRA3

1   a result, I will not describe them all completely, but, in sum,

2   in part for the benefit of Mr. Pittell, and limiting my

3   comments to the alleged improper conduct by Mr. Meringolo --

4   I'm not placing this in a broader context, and I understand

5   that there is a broader context -- the United States asserted

6   that Mr. Meringolo made improper contact with the principal

7   cooperating witness for the United States, telling him that he

8   was a disgrace, that counsel charged and shoved one of the

9   Assistant United States Attorneys in the hall outside the

10   courtroom, who had gone there in order to take counsel to task

11   for the alleged inappropriate statement to the witness, and

12   then the counsel later threatened counsel for the United

13   States, telling him, in essence, that I should drop you or

14   something along those lines.

15           That conduct could potentially be the subject of

16   criminal prosecution for interfering with or tampering with a

17   witness, threatening a prosecutor and potentially assault here

18   in a federal facility, among possible other offenses.  It could

19   also be the subject for disciplinary proceedings, Mr. Grant,

20   against your counsel by the Court, the disciplinary of

21   committee of this Court, the bar associations or other

22   professional organizations, of which he may be a member.

23           As you heard, the office of the United States Attorney

24   for the Southern District of New York has agreed,

25   unconditionally in an unwritten verbal agreement, not to itself

IBRKGRA3

1    pursue Mr. Meringolo for any potential offenses, federal

2    criminal offenses, arising from the conduct that we discussed

3    earlier.

4           They have also said that they will not take that

5    conduct into account in the future.  I said earlier that I

6    accept that proffer.  You will have to evaluate, among other

7    things, whether or not you believe that the United States

8    Attorney's Office will not consider the conduct here against

9    one of its assistants, in future interactions with

10   Mr. Meringolo.  That will be one of the issues that I will

11   bring to your attention as we discuss this.  I should say,

12   there is also the prospect of potential civil liability on

13   account of your counsel as a result of what was described to

14   the Court as an assault.  Mr. Bell has agreed to not pursue any

15   action with respect to such potential civil action.

16          Now, with respect to the office of the United States

17   Attorney for the Southern District of New York's agreement,

18   which I'll refer to as either "the office" or as "the USAO,"

19   that agreement is not written.  It is not binding on other

20   offices of the Department of Justice or on what we call Main

21   Justice, and it's not written.

22          Mr. Bell, I said, has personally disclaimed any civil

23   cause of action against Mr. Meringolo, and those commitments by

24   the government and Mr. Bell, I believe, were proffered largely,

25   I think, out of a desire to calm the waters in this case

IBRKGRA3

generally but also to potentially mitigate any potential

conflict of interest resulting from this set of issues, but

there is still a potential conflict.

          The government believes that that potential conflict

is waivable, meaning that so long as you understand the

potential conflicts and the ways in which it might affect

Mr. Meringolo and his representation of you in this case --

when I say Mr. Meringolo, I refer to him and his firm but

principally to Mr. Meringolo -- you can waive that right to a

conflict-free representation.  The purpose of this hearing is

for me to make sure that you understand the potential conflict,

how it might potentially impact your defense, and also, if you

choose to waive your right to conflict-free representation, to

ensure that your waiver is made voluntarily and knowingly.

          So I hope that that's a helpful introduction.  The

remainder of today's hearing will be focused on accomplishing

those goals.

          Counsel, before we proceed further, is there anything

that any of you would like to add to my description of what

I'll call the overview of what it is that I expect to achieve

during this proceeding?  Counsel for the United States?

          MS. LONERGAN:  No, your Honor.

          THE COURT:  Thank you.

          Mr. Meringolo or Ms. Cappellino?

          MS. CAPPELLINO:  No, your Honor.

IBRKGRA3

1           THE COURT:  Good.  Thank you very much.

2           So, Mr. Grant, as I explained, the purpose of this

3   proceeding is to make sure that you understand the potential

4   risks from having Mr. Meringolo and his firm serve as your

5   attorney, and to make sure that you've carefully considered

6   those risks, and are making an informed and voluntary decision

7   about who you want as your attorney here.  I want to make sure

8   that you have as full an understanding as I can provide to you

9   about all of the issues that a defendant should consider in

10  making that choice.  It's important that you make a wise

11  decision of that issue for yourself, and that is the purpose of

12  what we will be doing going forward.

13          Do you understand that?

14          DEFENDANT GRANT:  Yes, sir.

15          THE COURT:  Thank you.

16          Mr. Grant, I'm going to be asking you a number of

17  questions to make sure that you are able to understand the

18  proceedings today, and then I'm going to describe some of the

19  potential conflicts of interests, and I will ultimately ask you

20  to decide whether you wish for Mr. Meringolo and his firm to

21  continue to represent you.

22          Because I'm going to be asking you a number of

23  questions in connection with this proceeding, I'm going to ask

24  my deputy to administer an oath requiring that you answer my

25  questions truthfully.  Would you please stand for

IBRKGRA3

1        administration of the oath.

2                    (Defendant Grant sworn)

3                    THE COURT:  Thank you, Mr. Grant.  You can be seated.

4                    Mr. Grant, you're now under oath, which means that if

5        you answer any of my questions falsely, you can be prosecuted

6        for the separate crime of perjury or making a false statement.

7        The government would have the right to use any statement that

8        you give under oath against you in such a prosecution.

9                    Do you understand that?

10                   DEFENDANT GRANT:  Yes, sir.

11                   THE COURT:  Thank you.

12                   First, can you tell us tell me your full name?

13                   DEFENDANT GRANT:  James Grant.

14                   THE COURT:  Thank you.

15                   How old are you?

16                   DEFENDANT GRANT:  Forty-five.

17                   THE COURT:  Thank you.

18                   How far did you go in school?

19                   DEFENDANT GRANT:  Bachelor's degree.

20                   THE COURT:  Thank you.  I have some understanding of

21        your employment experience.

22                   Have you ever been treated or hospitalized for any

23        mental illness?

24                   DEFENDANT GRANT:  No, sir.

25                   THE COURT:  Are you currently, or have you recently

IBRKGRA3

1   been, under the care of a physician, psychiatrist or

2   psychologist?

3          DEFENDANT GRANT:  Yes.

4          THE COURT:  Thank you.

5          Is there any condition -- you can remain seated until

6   I ask you to stand.

7          DEFENDANT GRANT:  Okay.

8          THE COURT:  Thank you, though.

9          Is there any condition that limits your ability to

10  hear or understand what's happening in today's proceeding?

11         DEFENDANT GRANT:  No, sir.

12         THE COURT:  Thank you.

13         Within the past 24 hours, have you used or taken any

14  alcohol, drugs or medication?

15         DEFENDANT GRANT:  No, sir.

16         THE COURT:  Thank you.

17         Is your mind clear today?

18         DEFENDANT GRANT:  Yes, sir.

19         THE COURT:  Do you understand what's happening in this

20  proceeding?

21         DEFENDANT GRANT:  Yes, sir.

22         THE COURT:  Thank you.

23         Counsel, do any of you have any doubt as to

24  Mr. Grant's competency to proceed here today?

25         MS. LONERGAN:  No doubt, your Honor.

IBRKGRA3

```
 1              MR. MERINGOLO:  No, your Honor.

 2              THE COURT:  Thank you.

 3         Based on Mr. Grant's answers to my questions, my

 4    observations of his demeanor in the courtroom today, and

 5    counsel's representations, I find that Mr. Grant is competent

 6    to proceed with this hearing.

 7              Mr. Grant, I'm going to review a number of scenarios

 8    with you today, and I'm going to ask you a number of questions.

 9    At some point, as I signaled to you earlier, I'm going to ask

10    you to state your understanding of these issues in your own

11    words, and then I will ask you whether or not you want for

12    Mr. Meringolo to work on your case.

13              So please listen carefully to my questions, and

14    remember that at the end of the proceeding, I'll be asking you

15    to tell me what your understanding of the potential issues are.

16              DEFENDANT GRANT:  Excuse me, your Honor?

17              THE COURT:  Yes.

18              DEFENDANT GRANT:  Is Mr. -- the attorney, CJA

19    attorney, I didn't get a chance to talk to him.

20              THE COURT:  Thank you.  I'll give you ample

21    opportunity do that.

22              DEFENDANT GRANT:  I didn't know if you wanted me to

23    answer.

24              THE COURT:  Thank you.  I'll give you the opportunity

25    to do that.  And if at any point during today's proceeding,
```

IBRKGRA3

1   Mr. Grant, you'd like to confer with either counsel, either

2   Mr. Meringolo or Mr. Pittell, please don't hesitate to let me

3   know.  I'd be happy to give you as much time as you like to do

4   that at any point, whether now or at a later stage in the

5   proceeding.

6          Would you like to take time to confer with him at this

7   point?

8          DEFENDANT GRANT:  No, no.  Just my understanding of

9   your question was that you were going to ask me to give my

10  answer or opinion of what was going on, and I didn't really

11  consult with the attorney.  That's all.

12         THE COURT:  Thank you.  You will have the opportunity

13  to do that before I ask --

14         DEFENDANT GRANT:  I apologize.

15         THE COURT:  That's not a problem.  Thank you.

16         First, Mr. Grant, you're currently represented by

17  Mr. Meringolo; is that correct?

18         DEFENDANT GRANT:  Yes, sir.

19         THE COURT:  Thank you.

20         Do you wish to continue to be represented by him and

21  his firm?

22         DEFENDANT GRANT:  Yes, sir.

23         THE COURT:  Have you been satisfied with his

24  representation so far in the case?

25         DEFENDANT GRANT:  Yes, sir.

IBRKGRA3

1          THE COURT:  Thank you.

2          How long has Mr. Meringolo represented you?

3          DEFENDANT GRANT:  Since approximately three years.

4          THE COURT:  Thank you.

5          How long have you known him?

6          DEFENDANT GRANT:  Approximately three years.

7          THE COURT:  Thank you.

8          Has Mr. Meringolo represented you in any other

9  matters?

10          DEFENDANT GRANT:  No, sir.

11          THE COURT:  Thank you.

12          Has Mr. Meringolo informed you of the details of the

13  incident that occurred this morning and the issues that bring

14  us to this place?

15          DEFENDANT GRANT:  Yes, sir.

16          THE COURT:  Thank you.

17          Now, do you understand that the conduct of

18  Mr. Meringolo, as described by the prosecution to the Court and

19  the parties, might form the basis for a potential federal

20  criminal action against him?

21          DEFENDANT GRANT:  Yes, sir.

22          THE COURT:  Do you understand, however, that the

23  office of the United States Attorney for the Southern District

24  of New York has agreed not to prosecute him for any such claims

25  or to refer them to any other federal prosecutorial body?

IBRKGRA3

1              DEFENDANT GRANT:  Yes, sir.

2              THE COURT:  Are you aware that the United States

3    Attorney's Office has no authority to bind the Department of

4    Justice as a whole or any other United States Attorney's

5    Office?

6              DEFENDANT GRANT:  Yes, sir.

7              THE COURT:  Do you understand that the agreement by

8    the United States is not in writing?

9              DEFENDANT GRANT:  Yes, sir, I understand.

10             THE COURT:  Thank you.

11             Do you understand that, as a result, even with the

12   agreement by the United States, the United States Attorney's

13   Office, it is possible that a component of the Department of

14   Justice might pursue these claims against Mr. Meringolo despite

15   the agreement by the office?

16             DEFENDANT GRANT:  Yes, sir.

17             THE COURT:  Are you aware that the alleged, I'll call

18   it, shove described by Mr. Bell might form the basis of a civil

19   action by Mr. Bell personally against Mr. Meringolo?

20             DEFENDANT GRANT:  Yes, sir.

21             THE COURT:  Do you understand that despite Mr. Bell's

22   representation to the Court on that issue, that there is no

23   written agreement between him and Mr. Meringolo that would be

24   enforceable to present in such an action?

25             DEFENDANT GRANT:  Yes, sir.

IBRKGRA3

1            THE COURT:  Are you aware that the conduct described

2       by counsel for the United States might form the basis for

3       professional disciplinary action against Mr. Meringolo by the

4       court, meaning this court, or any bar or other professional

5       organization to which Mr. Meringolo is a member?

6            DEFENDANT GRANT:  Yes, sir.

7            THE COURT:  Thank you.

8            Now, do you understand that because of the conduct

9       that I have described and the potential exposure that I have

10      suggested and outlined for you, that Mr. Meringolo may, as a

11      result, act differently toward the government and the Court in

12      his representation of you?

13           DEFENDANT GRANT:  Can you repeat that?

14           THE COURT:  Yes.  Do you understand that because of

15      the conduct that I've described, that Mr. Meringolo may -- I'm

16      not saying will but may -- act differently toward the

17      government or the Court in his representation of you?

18           DEFENDANT GRANT:  Yes, sir.

19           THE COURT:  Thank you.

20           What I mean be by this, to expand, although you

21      understand already, is that Mr. Meringolo might have an

22      incentive to curry favor with the United States Attorney's

23      Office because he would want the government to view him more

24      favorably.

25           Do you understand that he might also be conceivably be

IBRKGRA3

1    tempted to take actions that might not be to your benefit in

2    order to assist or defend himself against possible future

3    investigation by offices of the government of the United States

4    that are not bound by the United States Attorney's Office's

5    commitment to him?  Do you understand that?

6            DEFENDANT GRANT:  Yes, sir.

7            THE COURT:  Do you understand that Mr. Meringolo might

8    seek to curry favor with Mr. Bell personally in order to ensure

9    that Mr. Bell does not pursue a civil action or other action

10   against him as a result of the alleged assault?

11           DEFENDANT GRANT:  Yes, sir.

12           THE COURT:  Alternatively, do you understand that

13   Mr. Meringolo might have an incentive to be hostile toward the

14   federal government, as represented here, either because of his

15   personal anger or resentment toward the United States against

16   the Department of Justice, and Mr. Bell in particular?

17           DEFENDANT GRANT:  Yes, sir.

18           THE COURT:  Thank you.

19           Now, Mr. Meringolo expressed some anger toward

20   Mr. Bell earlier today.  I hope that the concession by the

21   government and Mr. Bell will help to calm those waters, but do

22   you understand that it's possible that the existence of this

23   conduct and the potential criminal or civil liability or

24   disciplinary actions as a result of the conduct could cause

25   Mr. Meringolo to have incentives that are not entirely aligned

IBRKGRA3

1   with your interests, and that could affect the way that

2   Mr. Meringolo advises you?

3               DEFENDANT GRANT:  Yes, sir.

4               THE COURT:  Do you understand that because of the

5   possibility of disciplinary action against him by the Court or

6   another organization, that Mr. Meringolo may have a personal

7   interest in how he conducts this litigation so as to limit his

8   possible personal exposure to such sanctions or disciplinary

9   action?

10              DEFENDANT GRANT:  Yes, sir.

11              THE COURT:  Mr. Grant, do you know the rules of

12  soccer?

13              DEFENDANT GRANT:  Soccer?

14              THE COURT:  Yes.

15              DEFENDANT GRANT:  No.

16              THE COURT:  Fine.

17              I won't use this analogy.  The analogy I wanted to use

18  is a soccer player with a yellow card.

19              DEFENDANT GRANT:  Oh, yeah, I do know that, yes, sir.

20              THE COURT:  Fine.  So you understand that --

21              DEFENDANT GRANT:  The penalty.

22              THE COURT:  -- the soccer player with a yellow card

23  may play differently because they have a yellow card hanging

24  over their head, so they hope they don't get ejected.  I think

25  that's a reasonable analogy to help us understand this.

IBRKGRA3

1        Because of the alleged prior misconduct, Mr. Meringolo

2   may have a personal interest in comporting himself in a way

3   that does not invite sanction or future disciplinary action.

4        Do you understand that?

5        DEFENDANT GRANT:  Yes, sir.  It's a good analogy.

6        THE COURT:  Thank you.

7        Now, my hope is to ensure that you fully understand

8   your rights and the potential conflicts that could arise from

9   Mr. Meringolo's continued representation of you.  I'm going to

10  turn to those potential conflicts now.  And, again, I emphasize

11  these are potential conflicts, as I'll say it, and part of the

12  problem here is that I cannot anticipate all of the possible

13  ways in which this will be a concern, so I've tried, in the

14  window of the time that's been available, to come up with some

15  examples, but ultimately, as you'll hear, the problem is that

16  it's difficult for us or me to predict all of the possible ways

17  that this can come up.

18        But first let me describe the duties of an attorney to

19  you.  An attorney has a responsibility to represent a client to

20  the best of his ability, giving that client the attorney's best

21  advice about the client's legal options, and keeping

22  confidential any information the client gives to the attorney.

23        Do you understand that?

24        DEFENDANT GRANT:  Yes, sir.

25        THE COURT:  One of those responsibilities is the duty

IBRKGRA3

1    of loyalty.  The duty of loyalty means that an attorney must

2    exercise his professional judgment solely for the benefit of

3    his client.  That means that a lawyer's own interests should

4    not be permitted to have an adverse effect on the

5    representation of the client.

6            Do you understand that?

7            DEFENDANT GRANT:  Yes, sir.

8            THE COURT:  Now, let me try to give you some examples

9    of the ways in which the prospect of criminal or civil

10   liability or disciplinary action against Mr. Meringolo could

11   adversely affect his representation of you in this case.  It

12   could affect him in the way in which he considers and advises

13   you on whether you cooperate with the government, the arguments

14   that you make, that he makes on your behalf, and, in

15   particular, what arguments to make to the Court.

16           It could, indeed, affect each of the varying different

17   stages of the remaining stages of the prosecution.  It could

18   affect the way in which Mr. Meringolo advises you whether,

19   when, or if you should plead guilty, whether you should seek to

20   cooperate with the United States, what defenses you should

21   raise, whether you should testify here at trial, which

22   witnesses should be cross-examined, and what questions should

23   be asked, what witnesses to call, and what evidence should be

24   offered on your behalf, what arguments you may seek to make to

25   the jury, and what arguments to make to the Court, and what

IBRKGRA3

1    facts to bring to the Court's attention, both during the trial

2    and, in the event that you're convicted, at your sentencing.

3            Do you understand that it could affect any of the

4    remaining stages of this case?

5            DEFENDANT GRANT:  Yes, I do, sir.

6            THE COURT:  Thank you.

7            Now let's talk about this briefly in the context of

8    various points in your prosecution.  We'll talk about the

9    impact potentially at trial and also at sentencing.  While I

10   will describe some of these issues in the context of each of

11   those stages, you should understand that it's possible that any

12   of these issues that I articulate may apply to all of the

13   stages of this proceeding.

14           So, first, during the trial, you're entitled to have

15   your attorney work diligently on your behalf.  Among other

16   things, your attorney should be able to vigorously

17   cross-examine witnesses against you, if that is in your

18   interest, and should be able to make any arguments to the Court

19   and to the jury that will help you win an acquittal of the

20   charges against you.

21           In this case, because of this incident, your counsel

22   and counsel for Mr. Reichberg have already given up the

23   opportunity to cross-examine Mr. Rechnitz related to this

24   incident and potentially with respect to other instances in

25   which he allegedly misidentified people who were allegedly

IBRKGRA3

1    threatening him.

2              Your counsel may also choose to generally pursue less

3    rigorous cross-examination of the government's witnesses if he

4    believes that doing so would benefit him personally, in order

5    to curry favor with the United States to ensure that they

6    remain committed to the agreement that was provided to them and

7    to ensure that other components of the federal government to

8    not pursue action against him.

9              Do you understand that?

10             DEFENDANT GRANT:  Yes, sir.

11             THE COURT:  Thank you.

12             He might also choose not to challenge the introduction

13   of evidence by the United States or to limit the scope of the

14   evidence introduced on your behalf in order, again, to curry

15   favor with representatives of the United States.

16             Do you understand that?

17             DEFENDANT GRANT:  Yes, sir, I understand.

18             THE COURT:  Thank you.

19             Do you understand that, conversely, your counsel might

20   act angrily toward the government, based on his personal

21   feelings regarding this incident, in a way that may be

22   counterproductive to your interests as the defendant in this

23   case?

24             DEFENDANT GRANT:  Yes, I understand.

25             THE COURT:  Thank you.

IBRKGRA3

1      Do you understand that he also might not as vigorously

2   take on disputed issues with the Court, in order to protect

3   against possible disciplinary action or referral with respect

4   to the conduct underlying this hearing?

5      DEFENDANT GRANT:  Yes, I understand.

6      THE COURT:  Good.  Thank you.

7      Do you understand that, for the same reasons,

8   Mr. Meringolo may modify his presentation of issues to the

9   jury?  Alluding back to the yellow card example, you've seen

10   Mr. Meringolo in the past, strategically stray near the line in

11   order to benefit your interests.  Do you understand that he may

12   in the future choose not to tread so close to the line, given

13   the prospect of potentially disciplinary actions by the Court

14   or other professional bar organizations?

15      DEFENDANT GRANT:  Yes, sir; no red cards.

16      THE COURT:  Thank you.

17      Let's talk about the sentencing phase.  Let's assume,

18   just for these purposes, that you have been convicted, either

19   because you've pleaded guilty or because you went to trial, and

20   the jury has found you guilty.  The next phase of the

21   prosecution will be your sentence.  At the sentencing phase,

22   you will want your attorney to make any argument to the

23   sentencing judge that's available to you in order to ensure

24   that you get the most lenient sentence possible.

25      Now, in this instance, for example, Mr. Meringolo may

IBRKGRA3

1    not be willing to take the position that government conduct

2    during your prosecution or court conduct during your

3    prosecution was unreasonable.

4              DEFENDANT GRANT:  I understand, sir.

5              THE COURT:  Thank you.

6              Another possibility is that Mr. Meringolo might not

7    have the incentive to argue that the Court vary below any

8    sentencing guideline range recommended in your case, concerned

9    that such an argument against the government's position could

10   be taken against him personally.

11             Similarly, Mr. Meringolo might be reluctant to submit

12   additional materials in support of a request for a more lenient

13   sentence as he may be concerned that the government or the

14   Court would see the submissions as burdensome.  He may not want

15   to speak forcefully in opposition to the government in your

16   sentencing hearing, as at various stages during the trial

17   itself, as he may want to appear more amenable to the

18   government or to the Court.

19             Mr. Meringolo's guidance regarding whether or not you

20   may wish to offer to cooperate with the government may be

21   tainted because he may wish to encourage you to cooperate with

22   the government in order to gain favor with it.  He may fail to

23   preserve errors by objecting to elements of the government's

24   presentation of evidence at trial or at sentencing, again, in

25   order to gain favor with the United States or with the Court.

IBRKGRA3

1              In sum, Mr. Meringolo may be reluctant to take

2     positions in your case that the Court disapproves or that the

3     government opposes because of a desire to help himself in

4     connection with any potential action against him as a result of

5     the conduct that has given rise to this component of today's

6     proceedings.

7              Now, on the other hand, Mr. Meringolo's personal

8     feelings about his situation and the conduct underlying today's

9     set of circumstances might lead him to act out against the

10    United States, the government's attorneys, or in a way that

11    does not favor your interests.  It could cause him to become

12    hostile to the government or unnecessarily adversarial with the

13    government in a way that might not be in ultimately your best

14    interests.  He might encourage you, for example, not to

15    cooperate with the government, if you had the opportunity to do

16    so, if he thought that that might frustrate the government.

17             Also, it's possible that Mr. Meringolo's own matter

18    might lead him to develop hostility to the Court or to the

19    government.  He might take positions or make arguments in your

20    case that risk making the Court or the government less

21    sympathetic to you in connection with any ultimate sentencing

22    in your case in connection with the government's

23    recommendations regarding your possible sentence and the

24    Court's determinations with respect to what the appropriate

25    sentence might be, in the event that you're ultimately

IBRKGRA3

1    convicted.

2         So I've just tried to give you a number of comparables

3    that spread across the trial phase and also the sentencing

4    phase of this case, in the event that the jury convicts you of

5    any of the counts for which you've been indicted.

6         Do you understand all of the examples that I have just

7    given you?

8         DEFENDANT GRANT:  Yes, sir.

9         THE COURT:  Thank you.

10        Now, I've explained a number of different scenarios in

11   which a conflict might arise as a result of this set of issues.

12   You should realize, as I've tried to suggest earlier -- have

13   said earlier -- that I haven't discussed with you, and am not

14   able to foresee, all of the ways in which a conflict might

15   surface and in which you might be harmed.

16        Do you understand that?

17        DEFENDANT GRANT:  Yes, sir.

18        THE COURT:  Thank you.

19        The thing that you should understand is that I don't

20   know all the ways in which Mr. Meringolo's conduct today might

21   potentially affect his decisions about how to represent you.

22   Do you understand that perhaps the greatest danger to you lies

23   in the inability by me and others to foresee all of the

24   possible conflicts that might arise because of the issues that

25   we've talked about potentially implicating the personal

IBRKGRA3

1 interests of your counsel, on the one hand, and you, on the

2 other?  Do you understand that?

3           DEFENDANT GRANT:  Yes, sir.

4           THE COURT:  Thank you.

5           Now, I am going to give you the opportunity, if you'd

6 like, to confer further with Mr. Pittell.  You can do that now

7 or after I ask you to talk to me about your understanding of

8 the nature of the potential issues that could arise if you

9 choose to proceed with Mr. Meringolo and his firm's

10 representation here.  Typically, I ask a defendant to tell me

11 his view of the conflicts before they confer with counsel, but

12 I'd be very happy to allow you to confer further with counsel

13 now if you'd prefer to do that before I ask you to present your

14 views on this issue to the Court.

15           What would you prefer to do?  Feel free to consult

16 with counsel before responding.

17           DEFENDANT GRANT:  If it's okay, your Honor, I'd like

18 to speak to counsel now, before.

19           THE COURT:  That's fine.

20           Let me just say this:  When we come back, what I

21 expect to do, Mr. Grant, is to ask you to tell me, in your

22 words, what you understand the potential conflict to be if

23 Mr. Meringolo and his firm continues to represent you in this

24 matter, in light of the potential conflicts, albeit mitigated

25 conflicts, that we've discussed earlier, and I will ask you to

IBRKGRA3

1    do that in your words.  And I'm happy to take that up after

2    you've had the opportunity to confer.  Please, again, take as

3    much time as you like to do this.  There is no rush.  The most

4    important thing is for you to feel comfortable with this

5    decision and to feel comfortable that you understand all of the

6    possible permutations of the potential issue.

7         I'm going to step down now.  Please let Mr. Daniels

8    know when you're ready to proceed.  It may be, depending on how

9    long we need, that I'll need to take up another matter

10   downstairs.  If so, I'll come back up here as soon as I'm able.

11   Thank you, all.

12        (Recess)

IBRTGRA4

1          THE COURT:  So we're back on the record after a recess

2     during which Mr. Grant had the opportunity to confer with

3     Mr. Pittell.

4          Mr. Grant, have you had the opportunity to consult

5     with CJA counsel?

6          DEFENDANT GRANT:  Yes, sir.

7          THE COURT:  Have you had sufficient time to consult

8     with him?

9          DEFENDANT GRANT:  Yes, sir.

10          THE COURT:  Good.  Thank you.  So Mr. Grant, I would

11     like to ask you to tell me in your words what you understand

12     the potential conflict to be if Mr. Meringolo and his firm

13     continues to represent you in this matter.  What can you tell

14     me?

15          DEFENDANT GRANT:  Basically, Judge, my understanding

16     is that because of the altercation that occurred earlier today

17     that the conflict could possibly be that going forward

18     Mr. Meringolo would kind of be -- kind of a fork in the road

19     whether or not he represented me to the best of his ability and

20     had my rights, you know, like just basically represent me the

21     way that he has been, and going forward I do believe that he

22     will, you know, have my best interests going forward.

23          THE COURT:  Thank you.  What can you tell me about the

24     kind of scenarios in which the conflict of interest --

25     potential conflict of interest might affect Mr. Meringolo's

IBRTGRA4

1    representation of you?  You can give me your understanding of a

2    few of the examples of situations in which it could come up to

3    help me understand that you perceive them.

4            DEFENDANT GRANT:  One scenario would be that I guess

5    Mr. Meringolo in his mind thinks that the government is going

6    to pursue any charges, whether criminally or civilly, that he

7    might look to curry favor with the government or not vigorously

8    defend me the way he has been.  And I understand that that

9    conflict might arise, but if it does, I truly believe that he

10   will continue to vigorously defend me.

11           I'm happy with my representation.  I wouldn't have any

12   other lawyer going forward.  That's who I want to represent me,

13   and I know that he will do it to his best ability.

14           THE COURT:  Thank you.  What can you tell me about

15   your understanding regarding potential concerns about

16   Mr. Meringolo acting the other way, i.e., not to curry favor

17   with the government but with hostility.

18           DEFENDANT GRANT:  I understand that because he might

19   be upset and angry that he might just kind of like go on a

20   tantrum and not look for my best interests to represent me the

21   proper way.  And I feel like that's not going to happen, and

22   going forward I don't anticipate him becoming unhinged and

23   doing that.

24           THE COURT:  Thank you.

25           Counsel, is there any additional amount of information

IBRTGRA4

1    that you believe I should solicit from Mr. Grant before we

2    proceed?  Counsel for the United States?

3              MS. LONERGAN:  Not before we proceed, your Honor.

4              THE COURT:  Thank you.  Counsel for Mr. Grant,

5    Mr. Pittell or Ms. Cappellino?

6              MS. CAPPELLINO:  No, your Honor.

7              MR. PITTELL:  None from me, your Honor.

8              THE COURT:  Thank you.

9              Mr. Grant, if at the end of today's proceeding I

10   approve Mr. Meringolo's and his firm's representation of you,

11   you never will be able to complain about these issues again.

12   If you are sentenced after a conviction you will not be able to

13   say that your attorney did not represent you properly because

14   of the potential exposure resulting from today's alleged

15   conduct.

16             This is your last opportunity to complain about that

17   potential problem.  Do you understand that?

18             DEFENDANT GRANT:  Yes.  On this issue I wave the white

19   flag.

20             THE COURT:  Thank you.  Have you discussed all the

21   issues that we talked about today with Mr. Pittell and your

22   current counsel?

23             DEFENDANT GRANT:  Yes, sir, I have.

24             THE COURT:  Is there anything that you would like for

25   me to explain further about these issues?

1      DEFENDANT GRANT:  No, sir.

2      THE COURT:  Thank you.  Now do you understand,

3  Mr. Grant, that in every criminal case, including this one, the

4  defendant is entitled to assistance of counsel whose loyalty to

5  him is undivided, who is not subject to any factor that might

6  in any way intrude upon an attorney's loyalty to his interests.

7  Do you understand that?

8      DEFENDANT GRANT:  Yes, I do.

9      THE COURT:  In other words, do you understand that you

10  are entitled to the representation by an attorney who only has

11  your interest in mind and not his own interests?

12      DEFENDANT GRANT:  Yes, sir.

13      THE COURT:  Do you understand that you are entitled to

14  object to Mr. Meringolo's continued representation of you based

15  on the existence of potential conflict of interest?

16      DEFENDANT GRANT:  Yes, sir.

17      THE COURT:  Now after considering everything that we

18  have discussed today about the ways in which this series of

19  issues could adversely affect your defense, do you believe that

20  it is in your best interest to continue with Mr. Meringolo and

21  his firm as your counsel in this case?

22      DEFENDANT GRANT:  Yes, sir.

23      THE COURT:  Do you wish for Mr. Meringolo and his firm

24  to continue to represent you here?

25      DEFENDANT GRANT:  Yes, sir.

IBRTGRA4

<pre>
 1              THE COURT:  Do you understand that by choosing to
 2    continue with Mr. Meringolo and his firm as your counsel,
 3    you're waiving your right to be represented solely by an
 4    attorney who has no conflict of interest?
 5              DEFENDANT GRANT:  Yes, sir.
 6              THE COURT:  Do you understand that by waiving your
 7    right to conflict-free counsel you are relinquishing any
 8    post-conviction argument on appeal or otherwise that by virtue
 9    of this series of issues and any potential liability, civil,
10    criminal or otherwise, against Mr. Meringolo, that you were
11    denied effective assistance of counsel by him or his firm?
12              DEFENDANT GRANT:  Regarding this issue, right?
13              THE COURT:  Correct.
14              DEFENDANT GRANT:  Yes, sir.
15              THE COURT:  Thank you.  Has anyone made any promise to
16    you or made any threat to you that has caused you to choose
17    Mr. Meringolo or his firm to work as your lawyer in this case?
18              DEFENDANT GRANT:  No, sir.
19              THE COURT:  Are you knowingly and voluntarily waiving
20    your right to conflict-free representation?
21              DEFENDANT GRANT:  Yes, sir.
22              THE COURT:  Thank you.  Counsel for the United States,
23    do you have any additional questions that you would like me to
24    ask Mr. Grant at this time?
25              MS. LONERGAN:  No, your Honor.
</pre>

IBRTGRA4

1              THE COURT:  Thank you.  Counsel for Mr. Grant, any

2      additional questions that any of you would like me to ask at

3      this time?

4              MS. CAPPELLINO:  We do not, your Honor.

5              THE COURT:  Thank you.  Mr. Pittell?

6              MR. PITTELL:  No, your Honor.

7              THE COURT:  Thank you.  I find that Mr. Grant has

8      knowingly and voluntarily chosen Mr. Meringolo and his firm to

9      represent him in this case, and that Mr. Grant has waived his

10     right to conflict-free representation.

11             Good.  Thank you very much for your participation in

12     this, Mr. Grant and counsel.  Thank you, Mr. Pittell, for

13     stepping in for this proceeding.

14             MR. PITTELL:  You're welcome.

15             THE COURT:  Thank you.  Before we recess for the day,

16     I just want to thank the government again for taking what was I

17     think, as I said earlier, an unnecessary and therefore

18     particularly generous action with respect to this conduct.  And

19     I appreciate that for what it was and I thank you for it.

20             And I thank Mr. Bell and Mr. Meringolo each personally

21     for helping also to calm the waters.  I expect this case will

22     continue to be vigorously litigated on behalf of Mr. Grant and

23     Mr. Reichberg and the United States, but I hope that we come to

24     a pass where that can happen in a way that is less emotionally

25     fraught going forward.

IBRTGRA4

1           Anything else that we can take up in the absence of

2   Mr. Reichberg and his counsel, counsel for the United States?

3           MS. LONERGAN:  No, your Honor, thank you.

4           THE COURT:  Thank you.  Counsel for Mr. Grant?

5           MS. CAPPELLINO:  No, your Honor.

6           THE COURT:  Good.  Thank you all.  Have a good night.

7   I will see you tomorrow.

8           MS. LONERGAN:  Thank you.

9           (Adjourned to November 28, 2018, at 9:00 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25